EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JESÚS ROSADO ROSADO y ANICASIA DÁVILA HERNÁNDEZ, acusados y apelantes.

*Número:* CR-72-8      *Resuelto:* 20 de octubre de 1972

*Enrique Miranda Merced,* abogado de los apelantes; *Gilberto Gierbolini, Procurador General,* y *Rurico E. Rivera Rivera, Procurador General Auxiliar,* abogados de El Pueblo.

PER CURIAM: El apelante, Jesús Rosado Rosado, fue convicto de poseer y de ocultar y transportar heroína y con tal motivo fue sentenciado a cumplir consecutivamente dos penas de 7 a 10 años de presidio. La apelante Anicasia Dávila Hernández fue sentenciada a cumplir de 6 a 8 años de presidio por el mismo delito. El juicio de ambos se celebró por tribunal de derecho. José Luis López, acusado de los mismos cargos que los apelantes y que iba en el mismo vehículo que conducía el apelante en el momento de los hechos que dieron lugar a las acusaciones en contra de los tres, fue encontrado no culpable de los dos cargos que se le imputaron.

Apuntan que la prueba fue insuficiente, y que no se estableció que la apelante Anicasia Dávila Hernández poseyera la droga voluntaria, maliciosa y criminalmente.

La única prueba, la de cargo, se resume correctamente así, por la defensa:

"Por el Ministerio Público declaró el detective *Domingo Rentas,* que trabaja en la División de Control del Vicio, del Area Metropolitana. Conoce a J. Rosado ya que éste reside en el barrio Ingenio de Toa Baja, y él (el testigo) reside en el barrio Sabana Seca de Toa Baja. El va con frecuencia al barrio Ingenio. Hace como 7 u 8 años que conoce al acusado, quien es barbero. El día 26 de mayo de 1970 se encontraba dando una ronda en un auto oficial en compañía de los agentes Soler, Carlos Figueroa y Víctor M. París. Al pasar por la Calle Concepción final, en la parada 20:

'. . . pude ver que delante de nosotros pasaba un auto marca Hillman 566-121 y de súbito se detuvo delante de nosotros. Pude ver que el conductor era Jesús Rosado que yo conocía. Le indiqué al Agente Carlos Figueroa que se detuviera para prestarle ayuda.

P. ¿Qué vió que le hizo pensar que necesitaba ayuda?

R. Se paró de momento el auto y el motor dejó de funcionar. Ya que él era de un sitio lejos yo pensé que había algún problema. Cuando me le acerqué por el lado del chofer y notó mi presencia *cogió un sobre,* paquete color azul y se lo pasó a la joven Anicasia aquí presente. [Énfasis en el original.]

P. ¿Quién es Anicasia?

R. La joven que está con la falda amarilla y la chaqueta brown.

FISCAL:

Señala a la acusada.

P. ¿Cómo era el paquete que Rosado Rosado le pasó a la acusada Anicasia?

R. Azul. Ella lo tiró fuera del auto en que viajaba. Ella viajaba en la parte delantera al lado del chofer. Procedí a dar la vuelta por el frente del auto y cogí el paquete que ella tiró. Lo inspeccioné y dentro de ese paquete habían 15 envolturas a manera de deck y papel amarillo de las que se usan para envolver la heroína, un gotero y aguja hipodérmica. *Procedí a identificarme como agente de la policía* y le informé que estaban bajo arresto y sometí la evidencia antes mencionada al agente de la policía Edwin Medina, quien me informó el resultado y de ahí les llevé a la sala de investigaciones siendo acusados de drogas. [Énfasis en el original.]

P. ¿Quién iba en la parte del frente del carro?

R. Jesús Rosado guiando y Anicasia al lado.

P. ¿Había alguna otra persona?

R. El joven de la camisa azul en la parte de atrás y el Agente Víctor M. París intervino con él.'

Más adelante declaró que:

'Cuando Jesús Rosado le pasó a Anicasia ella lo ocupó y lo dejó caer en esa forma en la parte derecha del automóvil y cayó casi pegado a la rueda delantera del automóvil.

P. ¿En qué posición se encontraba a usted?

R. Frente a frente a Jesús Rosado Rosado cuando vi que él le pasó ese paquete que ella lo cogió del automóvil, yo di la vuelta por el frente del auto y ocupé el paquete.

P. ¿Tomando por referencia el frente del auto, donde se encontraba usted?

R. El frente mirando hacia Hato Rey y yo estaba por la parte izquierda mirando hacia el frente. Ahí vi que él le pasó el paquete a la joven y yo dí la vuelta y lo ocupé. *El agente Figueroa se paró frente a Jesús Rosado.'* [Énfasis en el original.]

A preguntas de la Defensa declaró que el agente Carlos Figueroa era el que conducía el automóvil. Nunca había visto a la acusada. El automóvil en que él viajaba era uno no rotulado. Jesús Rosado Rosado no le dijo nada a la acusada en el momento de pasarle el paquete. Ella lo tiró fuera del auto. El (el testigo) andaba vestido de civil, sin corbata, en camisa. No llegó a hablar con Jesús Rosado, ya que al ver esa acción abandonó el sitio donde estaba parado y dio la vuelta por el frente del vehículo a ocupar lo que había tirado. En ese momento el agente Figueroa salió del auto y se paró frente a frente a la puerta donde estaba Rosado frente al guía. Conocía al acusado Jesús Rosado como barbero. No conocía su vida privada.

A preguntas del Lcdo. Maldonado declaró que:

'Yo me desmonté, me dirigí hacia Jesús Rosado Rosado, le dije al Agente Figueroa que yo lo conocía. Fuí donde él y *después se desmontó el Agente Figueroa y los otros agentes también.*

P. ¿Cuándo se percató que Jesús manejaba el Hillman?

R. *Conozco perfectamente que era él. Conocía el auto.*

P. ¿Conocía la tablilla?

R. *566-121.'* [Subrayado en el original.]

El agente Víctor M. París, declaró que trabajaba en Control del vicio. El 26 de mayo de 1970, como a las 11:30 se encontraba trabajando como agente encubierto por el sector de la parada 20, en relación con una investigación de bolita. Estaba acompañado por Domingo Rentas, Figueroa y Soler. Conoce a José Luis López. Lo vio en esa ocasión. Continuó declarando que:

'Esa noche ellos, Figueroa y Rentas se apearon a tratar de ayudarlos a ellos y vieron cuando el chofer que iba guiando lanzó un paquete hacia la persona que queda a la parte derecha del chofer y *Soler y yo vimos que la persona que iba detrás se iba apeando hacia afuera del vehículo, inmediatamente nosotros nos apeamos, me apee yo, yo que voy detrás del asiento de Figueroa, me apee y veo cuando se mete la mano en el bolsillo delantero derecho del pantalón y saca algo y lo suelta al piso.* .Inmediatamente yo lo detengo y en unión al agente Soler y trato de ver lo que soltó y era un sobre manila con dos decks de supuestamente heroína.' [Subrayado en el original.]

En relación con los acusados Jesús Rosado y Anicasia Dávila se desarrolló el siguiente incidente, a preguntas de la Defensa:

'P. ¿Usted dijo que vio una persona entregando un sobre a otra?

R. Correcto.

P. ¿Cómo era el sobre?

R. *Un sobre legal.*

P. ¿Qué color?

R. *Azul.*

P. Don Víctor, qué es esto que le muestro, es su firma?

R. Correcto.

P. La leyó?

R. Correcto.

P. Mire a ver si en esa declaración jurada es o no cierto que una persona le pasó un sobre manila a otra y esa persona lo dejó caer, era manila o azul?

R. Era azul, *lo único que dentro del sobre manila estaba ese azul.*

P. ¿O sea, no era azul?

R. *Al caer al piso se vió que era azul.*

P. ¿Cuál estaba dentro, el azul dentro del manila o el manila dentro de azul?

R. *Azul dentro del manila.*

P. Por esa razón dice vió pasar un sobre manila y al caer era azul?

R. *Al caer se salió un poquito, no salió completo.'* [Énfasis en el original.]

El químico *Edwin Medina Vázquez* declaró que recibió la evidencia de manos del agente Domingo Rentas, la analizó y dió positivo de heroína."

Testificó, en contrainterrogatorio, el agente Domingo Rentas, primeramente, que no conocía la vida privada del apelante Rosado. Luego testificó que "Tenía otros conocimientos de su persona también." pero que no había dicho o escrito o hecho referencia a otra cosa que no sea el hecho de que era barbero.

Las partes estipularon que el policía Víctor París le entregó al químico dos envolturas de papel amarillo conteniendo polvo blanco y se determinó la presencia de heroína en los dos *decks.*

■ Apunta la defensa que de los dos agentes que testificaron, uno no le mereció credibilidad en absoluto al tribunal de instancia mientras que creyó la del otro que era de similar naturaleza ". . . tan improbable . . . tan claramente . . . inventada que . . . resultaba insuficiente para establecer la culpabilidad de los acusados fuera de duda razonable." El récord no indica que el juez sentenciador relacionara las razones que tuvo para creer a un agente y al otro no.

Arguye el Procurador General en contrario que:

"No hay nada de inverosímil en la historia relatada por el agente Domingo Rentas. Este conocía al acusado-apelante quien igual que él residía en el mismo pueblo—Toa Baja—y conocía la ocupación de aquél—barbero—. Su presencia en Santurce, lejos de su residencia, con problemas del automóvil, motivó razonablemente al agente Rentas a ofrecerle ayuda debido a dichas dificultades. No era tampoco irrazonable que al ser lanzado el sobre fuera del vehículo se aprestara a recogerlo y procediera a su examen y que como consecuencia de dicha inspección se produjera [*sic*] a la ocupación de la droga.

No se trata tampoco de un conflicto de prueba, ya que la defensa no presentó ninguna. Todo descansaba en la sana discreción del tribunal sentenciador en cuanto a la apreciación de la prueba. A los fines de resolver el caso de autos en la forma en que lo hizo bastaba la declaración del agente Rentas."

■ Es necesario señalar que este es uno de una serie de casos recientes en que el testimonio del agente es al efecto de que, al acercarse al acusado por determinada razón, éste tiró, lanzó, o dejó caer al piso un paquete o sobre que, al ocuparse, se determinó que contenía heroína. La similitud en los testimonios sobre este particular en estos casos se presta a la inferencia razonable de que los agentes de la policía, en casos de droga, han adoptado esta táctica de testimoniar por las razones que señala la defensa en este caso.

De lo expuesto concluimos que, en ausencia de una explicación satisfactoria del juez sentenciador de porqué creyó un testimonio y no otro que era similar a aquél en un caso que constituye uno de una serie en que la prueba de cargo es similar al efecto de que el acusado ha arrojado, tirado o dejado caer un paquete o sobre que resulta contener heroína, ha debido absolver, como por la presente se absuelven, a los apelantes de los cargos que en este caso se le formularon, así como se absolvió al acusado López Gómez de los mismos cargos.

En tal virtud, *se revocarán las sentencias dictadas en este caso por el Tribunal Superior, Sala de San Juan, en 4 de mayo de 1971.*

El Juez Asociado, Señor Martín, disintió.