EL PUEBLO DE PUERTO RICO, peticionario, *v.* PEDRO ORTIZ ZAYAS, acusado y recurrido.

*Número:* CE-87-425      *Resuelto:* 15 de noviembre de 1988

*Rafael Ortiz Carrión, Procurador General,* y *Rose Mary Corchado Lorent, Procuradora General Auxiliar,* abogados de El Pueblo; *José A. Gutiérrez Núñez,* abogado del recurrido.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del Tribunal.

Contra el recurrido, Pedro Ortiz Zayas, se presentó una denuncia en la que se le imputaba la posesión de la sustancia controlada conocida como "cocaína". Celebrada la vista pre-

liminar se determinó la existencia de causa probable para acusar, por lo que se presentó la correspondiente acusación.

Oportunamente el acusado presentó una moción de supresión de evidencia, a la que se opuso el Ministerio Público. El 4 de junio de 1987 se celebró la vista para dilucidar el asunto, en la que el fiscal presentó los testimonios de los agentes Pedro I. Reyes Cruz y José E. Matos Cartagena, además de estipularse el testimonio del químico y del agente de campo. Los agentes Reyes Cruz y Matos Cartagena declararon, según el resumen de sus declaraciones que hace el propio recurrido en el alegato presentado,(1) lo siguiente.

El agente Reyes Cruz señaló que el 21 de noviembre de 1986, junto a los agentes Rivera, Martínez, Zambrana y Matos Cartagena, estaba realizando una ronda preventiva por la carretera 771 de Barranquitas con el propósito de examinar las patentes en los diferentes negocios del área. Al llegar al Colmado Bar Ortiz, observó que frente al negocio estaba un individuo, quien luego resultó ser el recurrido Ortiz Zayas. Éste llevaba en sus manos una caja que contenía en su interior varios cartones de cigarrillos marca "Winston". Al percatarse de la presencia de los agentes, el acusado recurrido asumió una actitud nerviosa e inmediatamente entró al negocio. El testigo entró por otra puerta y observó cuando el acusado sacó de la caja una envoltura de papel de aluminio y en forma sospechosa la lanzó en dirección al mostrador de la barra. La misma cayó cerca de la entrada del mostrador. Declaró, además, el agente que por su experiencia como agente de drogas reconoció la envoltura como una de las que generalmente se utilizan para empacar

---

(1) El acusado recurrido cuestiona la utilización de los adverbios "sumamente" que precede la palabra "nervioso", y "disimuladamente" que precede la frase "coloca sobre el mostrador", así como la mención de una supuesta información sobre conducta ilegal anterior del acusado, que hace el Procurador General en su recurso. Alegato del Procurador General, págs. 4 y 11. Por no ser esenciales para la resolución del mismo, no las consideraremos.

heroína o cocaína. Pasó por el lugar donde cayó la envoltura, la recogió, la abrió y, al examinarla, observó que contenía un polvo blanco que le pareció era cocaína o heroína. Inmediatamente arrestó al acusado y le hizo las advertencias de rigor. El contrainterrogatorio se limitó a tratar de establecer que el acusado era el dueño del negocio y que había un empleado detrás del mostrador en esos momentos; que el contenido de la envoltura no se veía; que el papel de aluminio se puede utilizar para otras cosas, y el momento en que el agente concluyó que el acusado manejaba drogas.

El agente Matos Cartagena, más o menos, corroboró lo expresado por el agente Reyes Cruz en lo que él pudo observar. Añadió que cuando el agente Reyes Cruz le estaba haciendo las advertencias al acusado se percató de que éste tenía en su mano derecha una caja de fósforos y en forma nerviosa la puso en el mostrador. El agente levantó la caja de fósforos, la abrió y observó que dentro de la misma había unas bolsitas plásticas transparentes que contenían en su interior un polvo blanco, el cual por su experiencia le pareció era cocaína o heroína. El contrainterrogatorio se limitó a tratar de establecer que el contenido de la caja de fósforos no podía verse desde su exterior, a cuestionar el motivo para ocuparla y el momento en que ocurre la intervención con el acusado.

■ Luego de escuchar los planteamientos de la defensa y del Ministerio Público, el tribunal de instancia declaró con lugar la moción de supresión de evidencia. En una escueta resolución escrita se señala como único fundamento que su dictamen está fundamentado en la prueba desfilada.(2)

De esa resolución recurre ante nos el Procurador General y hace el señalamiento de error siguiente:

---

(2) Reiteramos que la omisión del tribunal de exponer fundamentos dificulta nuestra función revisora. *Pueblo v. Corraliza Collazo*, 121 D.P.R. 244 (1988).

### IV. *CUESTION PLANTEADA*

Erró el Honorable Tribunal de instancia al declarar con lugar la moción de supresión de evidencia cuando la prueba desfilada claramente demuestra que procedía la ocupación de la evidencia arrojada por al acusado. Petición de *certiorari*, pág. 4.

Una sala de este Tribunal ordenó al acusado recurrido mostrar causa por la cual no debíamos expedir el auto para revocar la resolución del tribunal de instancia que declaró con lugar la moción de supresión de evidencia. El recurrido compareció. Estamos en posición de resolver.

### I

Como ha señalado un comentarista:

La importancia de la propiedad abandonada en el derecho de registros e incautaciones descansa en la máxima de que la protección de la Cuarta Enmienda no se extiende a ella. De este modo, cuando alguien abandona una propiedad se dice que ha traído a su fin su derecho de intimidad, y no puede luego quejarse de su posterior incautación y uso como evidencia en su contra. En resumen, la teoría de abandono es que no está presente ningún registro en dicha situación, y la propiedad así abandonada puede ser incautada sin la existencia de causa probable. (Traducción nuestra.) E.G. Mascolo, *The Role of Abandonment in the Law of Search and Seizure: An Application of Misdirected Emphasis*, 20 (Núm. 2) Buffalo L. Rev. 399, 400–401 (1971).

Desde principios de siglo el Tribunal Supremo federal ha descansado en la teoría del abandono. En *Hester v. United States*, 265 U.S. 57 (1924), varios agentes estaban observando una venta ilegal de licor a distancia cuando alguien dio la voz de alarma. Los dos (2) participantes corrieron y fueron perseguidos por los oficiales, quienes encontraron un jarro y una botella que habían sido arrojadas por los dos (2) hombres. Señaló el Tribunal que "the defendant's own acts, and those of his associates, disclosed the jug, the jar and the bot-

tle — and there was no seizure in the sense of the law when the officers examined the contents of each after it had been abandoned". *Hester v. United States*, supra, pág. 58. Igualmente, en *Abel v. United States*, 362 U.S. 217 (1960), donde el acusado, al ser arrestado en su habitación de hotel, empacó sus pertenencias, entregó la habitación y dejó atrás varios artículos en el zafacón, el Tribunal concluyó que:

> Nor was it unlawful to seize the entire contents of the wastepaper basket, even though some of its contents had no connection with crime. So far as the record shows, petitioner had abandoned these articles. He had thrown them away. So far as he was concerned, they were *bona vacantia*. There can be nothing unlawful in the Government's appropriation of such abandoned property. (Cita omitida.) *Abel v. United States*, supra, pág. 241.

■ Aunque el Tribunal, en *Abel v. United States*, supra, parece referirse al abandono en el sentido del derecho real o de propiedad,[3] nos aclara un estudioso de esta materia que "while it is true that such abandonment will at least sometimes suffice in this context, it should not be assumed that the property law concept of abandonment is controlling as to the reach of the Fourth Amendment". W.R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment*, 2da ed., Minnesota, Ed. West Pub. Co., 1987, Vol. 1, Sec. 2.6(b), pág. 464. Al igual que a dicho autor, nos parece correcto la distinción que se hace en el caso de *City of St. Paul v. Vaughn*, 237 N.W.2d 365, 370–371 (1975), donde se señala que:

> The distinction between abandonment in the property-law sense and abandonment in the constitutional sense is critical

---

(3) La referencia al *bona vacantia* se entiende como "bienes vacantes", L.A. Robb, *Dictionary of Legal Terms*, Nueva York, Ed. John Wiley & Sons, 1955, pág. 140, o como señala el *Black's Law Dictionary*: "things in which nobody claims a property, and which belonged, under the common law, to the finder . . . ." H.C. Black, *Black's Law Dictionary*, 4ta ed., Minnesota, Ed. West Pub. Co., 1951, pág. 223.

to a proper analysis of the issue. In the law of property, the question, as defendant correctly states, is whether the owner has voluntarily, intentionally, and unconditionally relinquished his interest in the property so that another, having acquired possession, may successfully assert his superior interest. Brown, Personal Property (3 ed.) sec. 1.6.

In the law of search and seizure, however, the question is whether the defendant has, in discarding the property, relinquished his reasonable expectation of privacy so that its seizure and search is reasonable within the limits of the Fourth Amendment. Cf. *Katz* v. *United States*, 389 U.S. 347, 88 S. Ct., 507, 19 L.Ed.2d 576 (1967). In essence, what is abandoned is not necessarily the defendant's property, but his reasonable expectation of privacy therein.

Where the presence of the police is lawful and the discard occurs in a public place where the defendant cannot reasonably have any continued expectancy of privacy in the discarded property, the property will be deemed abandoned for purposes of search and seizure.

A ese respecto, sostiene LaFave que:

La gran mayoría de las decisiones judiciales relacionadas con el abandono de objetos en el contexto de registro e incautaciones son similares a *Vaughn* en cuanto a que aparece que el acusado trató de disponer de ciertos objetos incriminatorios en ocasión de un acercamiento o persecución legal de la policía.

.     .     .     .     .     .     .     .

Sin embargo, no debemos presumir que en todas las instancias en que el acusado ha dejado la posesión o el control de un objeto, aunque brevemente, ha ocurrido un abandono para propósitos de la Cuarta Enmienda. Lo fundamental es ver si el abandono ocurrió en circunstancias que indiquen que la persona no retuvo una expectativa justificada de intimidad sobre el objeto. Así, como concluyó el Tribunal Supremo en *Ríos* v. *United States*, "a passenger who lets a package drop to the floor of the taxicab in which he is riding can hardly be said to have 'abandoned' it." (Traducción nuestra y escolios omitidos.) LaFave, *op. cit.*, págs. 466–467.

██ Debemos enfatizar, además, que está claramente establecido que aun cuando un objeto abandonado generalmente puede ser obtenido y utilizado para propósitos evidenciarios por la Policía, no es así si dicho abandono se debió a la coerción ejercida por una intervención ilegal de la Policía. LaFave, *op. cit.*, pág. 471; *Commonwealth v. Pollard*, 299 A.2d 233 (Pa. 1973); *State v. Reed*, 284 So. 2d 574 (1973). Así, cuando una persona se libra de la posesión de un objeto en respuesta a un esfuerzo de la Policía por realizar un arresto o registro ilegal,(4) los tribunales no han vacilado en declarar la evidencia inadmisible. *United States v. Beck*, 602 F.2d 726 (5to Cir. 1979); *United States v. Newman*, 490 F.2d 993 (10mo Cir. 1974); *McDaniel v. State*, 307 So. 2d 710 (1974); *People v. Shabaz*, 378 N.W.2d 451 (1985); *State v. Dineen*, 296 N.W.2d 421 (1980); *Com. v. Harris*, 421 A.2d 199 (Pa. 1980); *Com. v. Barnett*, 424 A.2d 867 (Pa. 1981).

██ Este Tribunal, aunque sin abundar, también ha resuelto que la garantía constitucional contra allanamientos y registros ilegales no cubre la incautación de evidencia que es arrojada o abandonada. *Pueblo v. Ortiz Martínez*, 116 D.P.R. 139 (1985); *Pueblo v. Llanos Virella*, 97 D.P.R. 95 (1969); *Pueblo v. Arroyo Ramírez*, 96 D.P.R. 576 (1968); *Pueblo v. Saura Gómez*, 90 D.P.R. 801 (1964); *Pueblo v. Colón Colón*, 88 D.P.R. 187 (1963); *Pueblo v. González Charón*, 83 D.P.R. 450 (1961); *Pueblo v. Del Valle*, 83 D.P.R. 457 (1961).

## II

Del testimonio incontrovertido de los agentes(5) surge que el recurrido, al percatarse de la presencia de los agentes,

---

(4) Es requisito indispensable que se establezca una relación de causa y efecto entre la intervención ilegal y el abandono. *United States v. Pirolli*, 673 F.2d 1200 (11mo Cir. 1982); *State v. Washington*, 376 So. 2d 1216 (1979); *State v. Oliver*, 368 So. 2d 1331 (1979).

(5) Por no surgir de la resolución los fundamentos que utilizó el juez de instancia, debemos partir de la premisa de que el testimonio de los agentes le mere-

se puso nervioso y entró al negocio, el cual estaba abierto al público, y arrojó la envoltura de papel de aluminio al suelo. Obviamente la naturaleza del objeto, una envoltura de las que generalmente se utiliza para envolver cocaína o heroína, y el lugar donde fue arrojada, un bar abierto al público, indica que no podía haber una razonable expectativa de intimidad justificada hacia esa envoltura, pues cualquier curioso que pasara podía examinarla. *California v. Greenwood*, 100 L.Ed.2d 30 (1988), caso de registro de bolsas de basura. Quien deja un objeto en el suelo o en el mostrador de un bar que es frecuentado por muchas personas debe razonablemente esperar que el objeto sea recogido, examinado o manejado por un empleado o cualquier persona del público que esté en el lugar. Véase *People v. Loveless*, 400 N.E.2d 540 (1980); *Buchanan v. State*, 432 So. 2d 147 (1983).

Argumenta el recurrido que:

Si eliminamos los adverbios sumamente y disimuladamente y en adición eliminamos el hecho de que agente alguno le haya dicho a los testigos en el momento de la intervención que se trataba de un tirador de drogas y que tenía casos pendientes con qué se queda el Estado *a los efectos de establecer motivos fundados para intervenir.* Se queda el Estado con el testimonio de dos agentes que declaran que andan en una ronda preventiva cotejando patentes de negocios y que al llegar al negocio Bar Ortiz ven al señor que resultó ser Pedro Ortiz Zayas que va entrando a su negocio cargando en sus manos una caja de cartón conteniendo en su interior cartones de cigarrillos marca Winston. Que de la misma saca un papel de aluminio y

cíó crédito, o sea, que suprimió la evidencia a base de la interpretación del derecho aplicable. *Pueblo v. Corraliza Collazo*, supra. Por esa razón estimamos innecesario resolver este caso bajo la norma de *Pueblo v. González del Valle*, 102 D.P.R. 374 (1974). El tribunal de instancia, aun bajo el rigor de *Pueblo v. González del Valle*, supra, y su progenie, le dio crédito a los testimonios, pero entendió que aun así los agentes no tenían motivos fundados para el arresto y el registro. Al así resolver incidió. Ello no quiere decir, bajo ninguna circunstancia, que estemos descartando y mucho menos revocando la norma de *Pueblo v. González del Valle*, supra.

lo tira hacia' el mostrador donde se encuentra su empleado. (Énfasis suplido.) Alegato del acusado-recurrido, págs. 11–12.

Se olvida el recurrido que, como ya hemos señalado, la teoría de la evidencia arrojada o abandonada es que en dicha situación no está presente un registro, por lo que la propiedad así abandonada puede ser incautada sin la existencia de causa probable. Sólo tendríamos que entrar a examinar la existencia de causa probable si se estableciera que el abandono se debió a una intervención ilegal de la Policía. En nuestro caso el acusado arrojó la envoltura sin que mediara actuación policiaca, por lo que el abandono no puede ser consecuencia de conducta ilegal alguna. La actuación de los policías se limitó a seguir al individuo hasta dentro de un negocio abierto al público. La intervención sólo ocurre una vez el agente Reyes Cruz examina el contenido de la envoltura y se percata de que su contenido parece ser una sustancia controlada. Tenía desde ese momento "motivos fundados" para arrestarlo. Tampoco debe haber duda de que la posterior incautación de la caja de fósforos, de la cual el recurrido trató de deshacerse una vez estaba bajo arresto, es válida por ser ésta incidental al arresto.

Por los motivos antes expuestos, *se expide el auto, se revoca la resolución del Tribunal Superior que suprimió la evidencia ocupada y se devuelve el caso para que continúen los procedimientos en forma compatible con lo aquí resuelto.*

El Juez Asociado Señor Rebollo López emitió opinión disidente. El Juez Asociado Señor Hernández Denton disiente sin opinión escrita.

—o—

Opinión disidente emitida por el Juez Asociado Señor Rebollo López.

Una lectura de la opinión que en el presente caso emite una mayoría de los integrantes del Tribunal produce la impresión de que la misma se emite en un "vacío o laguna" existente hasta el día de hoy en nuestro ordenamiento jurídico. Esto es, que en relación con el tema o materia a que se refiere la misma no existía hasta el presente norma jurisprudencial alguna en nuestra jurisdicción.

La opinión mayoritaria emitida ignora una norma establecida por este mismo Tribunal desde hace, cuando menos, quince años, la cual controla y resuelve la situación fáctica que plantea el caso ante nuestra consideración.

Llana y sencillamente nos enfrentamos nuevamente ante una de las modalidades más conocidas del testimonio estereotipado: el de la "evidencia abandonada o lanzada al suelo", conocida en la jurisprudencia norteamericana como el *dropsy testimony*.

I

En términos generales, resulta ser correcto lo afirmado en la opinión mayoritaria a los efectos de que este Tribunal ha emitido en el pasado una serie de decisiones mediante las cuales ha resuelto que la garantía constitucional contra registros y allanamientos ilegales no cubre la incautación de una evidencia que es arrojada o abandonada en un campo o sitio abierto. Eso ha sido así escuetamente expresado en la serie de casos que se citan en la opinión mayoritaria emitida, a saber: *Pueblo v. González Charón*, 83 D.P.R. 450, 452 (1961); *Pueblo v. Del Valle*, 83 D.P.R. 457, 458 (1961); *Pueblo v. Colón Colón*, 88 D.P.R. 187, 189 (1963); *Pueblo v. Saura Gómez*, 90 D.P.R. 801, 803 (1964); *Pueblo v. Arroyo Ramírez*, 96 D.P.R. 576, 578 (1968); *Pueblo v. Llanos Virella*, 97 D.P.R.

95, 98 (1969); *Pueblo v. Ortiz Martínez*, 116 D.P.R. 139, 144–145 (1985).

Un examen detenido de los primeros seis casos arriba enumerados demuestra que la prueba aportada por el Estado en dichos casos —según la misma fuera resumida por este Tribunal—(1) era una sumamente similar en su contenido, y hasta "flaca y descarnada". Ello no obstante, este Tribunal —siguiendo jurisprudencia del Tribunal Supremo de los Estados Unidos, repetimos, a los efectos de que la garantía constitucional contra registros y allanamientos ilegales no cubre situaciones en que la evidencia ocupada es "abandonada"— confirmó las convicciones decretadas en dichos casos a nivel de instancia.

---

(1) En *Pueblo v. González Charón*, 83 D.P.R. 450 (1961), al acercarse en horas de la noche unos agentes a un auto estacionado, con el baúl abierto, en la carretera pudieron observar a dos personas que cargaban un saco en dirección a dicho auto. Al éstos percatarse de la presencia de los agentes, alegadamente soltaron el saco en la carretera, echando a correr. El saco "abandonado" contenía "ron caña".

En *Pueblo v. Del Valle*, 83 D.P.R. 457 (1961), el apelante —quien caminaba por una vía pública— al ver a un agente del orden público soltó o abandonó en dicha vía pública una bolsa de papel que llevaba en sus manos. La bolsa de papel contenía un envase con "ron caña".

En *Pueblo v. Colón Colón*, 88 D.P.R. 187 (1963), los apelantes, quienes transitaban en un vehículo de motor, al percatarse de la presencia de los agentes de la Policía, detuvieron el vehículo, bajándose del mismo uno de ellos quien botó un papel. La lista era una relacionada con el juego ilegal de la bolita.

En *Pueblo v. Saura Gómez*, 90 D.P.R. 801 (1964), unas personas que se estaban "inyectando", al percatarse de la presencia de la Policía, arrojaron al pavimento la parafernalia que estaban utilizando para inyectarse, la cual fue recogida por los agentes, dando la misma positiva de heroína.

En *Pueblo v. Arroyo Ramírez*, 96 D.P.R. 576 (1968), cuatro personas se "inyectaban" en una casa abandonada; al percatarse de la presencia de la Policía arrojaron al piso de la misma la parafernalia que utilizaban en esos menesteres. La misma, luego de ser recogida por los agentes, fue examinada, dando positivo de heroína.

En *Pueblo v. Llanos Virella*, 97 D.P.R. 95 (1969), un policía observó a dos personas que cargaban unos paquetes grandes en sus manos. Se desmontó de la patrulla en que transitaba porque le tuvieron "caras de sospechosos". Éstos, al ver al policía, arrojaron los paquetes a la vía pública. Los mismos contenían propiedad hurtada.

Parece ser, sin embargo, que el gran número de casos con que se enfrentó este Tribunal a través de los años en que, una y otra vez, se repetía el testimonio "flaco y descarnado" de los agentes del orden público a los efectos de que "lo miré, él me miró y tiró al piso, y yo recogí y encontré" causó que este Foro, en *Pueblo v. Rosado Rosado*, 100 D.P.R. 905, 911 (1972), expresara, al revocar la convicción apelada, que era "necesario señalar que este es uno de una serie de casos recientes en que el testimonio del agente es al efecto de que, al acercarse al acusado por determinada razón, éste tiró, lanzó, o dejó caer al piso un paquete o sobre que, al ocuparse, se determinó que contenía heroína. La similitud en los testimonios sobre este particular en estos casos se presta a la inferencia razonable de que los agentes de la policía, en casos de droga, han adoptado esta táctica de testimoniar por las razones que señala la defensa en este caso", esto es, a los fines de evitar el planteamiento de la defensa de que la evidencia ocupada fue el producto de un arresto y registro ilegal.

Dos años más tarde, en *Pueblo v. González del Valle*, 102 D.P.R. 374 (1974), el Tribunal adoptó la norma vigente en esta clase de situaciones. Expresamos en dicho caso, en lo pertinente, que:

> *El testimonio del agente que intervino con el apelante es idéntico al presentado en una serie de casos que recientemente hemos revocado.* Declaró el agente que había un grupo de personas reunidas en el Parterre en Aguadilla y que al darse cuenta que se acercaba a ellos, uno del grupo exclamó: "Ahí vienen los camarones"; que el apelante entonces "... Metió la mano derecha al bolsillo izquierdo de la camisa y sacó una cajetilla de cigarrillos Winston y la tiró debajo de un carro, de un Chevrolet del 1961, colorado, la caja de cigarrillos dio abajo, en el filo del guardalodo trasero, cayendo abajo del vehículo. Yo recogí la caja, la abrí y dentro de la caja habían [sic] tres cigarrillos, tres envolturas a manera de cigarrillos, lo que comúnmente se usa en el tráfico ilegal de marihuana. Yo al ver esa envoltura procedí a arrestar a Egidio [el acusado]."

*El caso aquí planteado exige que reiteremos las reglas referentes al testimonio estereotipado en casos de narcóticos y bolita.* La necesidad de utilizar agentes, encubiertos o no, para atacar el nocivo tráfico de drogas, así como la admisibilidad de su testimonio en circunstancias adecuadas, se ha reconocido en ésta y otras comunidades. [Citas omitidas.] Los agentes encubiertos del orden desempeñan una tarea delicada y difícil en la campaña contra el crimen. Obran usualmente a riesgo de su vida y debe reconocerse la importancia de su labor. Del otro lado, *es doctrina establecida en Puerto Rico* y .otras localidades que el uso del testimonio de agentes encubiertos y confidentes *o el uso de declaraciones estereotipadas por cualquier otro tipo de testigo, debe ser objeto de escrutinio riguroso para frenar el celo excesivo que pueda, vía declaraciones inexactas o falsas, vulnerar los derechos de ciudadanos inocentes.* [Citas omitidas.] Estamos ante una instancia más de *la necesidad de equilibrar los intereses en juego,* de permitir y estimular la defensa de la comunidad contra un mal corrosivo y la de proteger también los derechos de la ciudadanía, base de toda democracia.

*Uno de los testimonios más susceptibles a ataque y causantes de duda en el ánimo judicial es el de la naturaleza indicada.* El incremento advertido en otros lugares respecto a formas estereotipadas de declarar arranca particularmente de la decisión del Tribunal Supremo de Estados Unidos en *Mapp* v. *Ohio,* 367 U.S. 643 (1961). Comment, *Police Perjury in Narcotics "Dropsy" Cases: A New Credibility Gap,* 60 Geo. L.J. 507 (1971). La misma situación es objeto de comentario por este Tribunal en *Ayala Ruiz,* supra. *Mapp,* como se recordará, prohibió la admisión en los tribunales estatales de evidencia obtenida en violación de la Cuarta Enmienda de la Constitución de los Estados Unidos, referente a allanamientos o registros irrazonables. Esto era así en Puerto Rico desde 1952 por disposición expresa de la Sec. 10 del Art. II de nuestra Constitución y aun desde mucho antes. Véase: *Pueblo* v. *Capriles,* 58 D.P.R. 548 (1941) y casos allí citados.

*El testimonio estereotipado, mediante el cual en caso tras caso se declaraba en modo casi idéntico, limitándose el fiscal a probar los elementos mínimos del delito, constituyó a todas luces una manera tentadora de esquivar los rigores de Mapp*

*y de la parte citada de la Carta de Derechos de la Constitu-
ción de Puerto Rico. Pueblo* v. *Soto Zaragoza,* supra, 354, es-
colio 2.

*Hemos hecho alusión en varias ocasiones a una de las mo-
dalidades más conocidas del testimonio estereotipado: al de
la-evidencia-abandonada-o-lanzada-al-suelo. Pueblo* v. *Ro-
sado Rosado,* 100 D.P.R. 905 (1972); *Pueblo* v. *Maysonet Lau-
reano,* 90 D.P.R. 497 (1964). A esta forma de atestiguar es que
se le conoce en la jurisprudencia de Estados Unidos como
*"dropsy testimony",* Comment, *Police Perjury in Narcotics
"Dropsy" Cases: A New Credibility Gap,* 60 Geo. L.J. 507
(1971).

.  .  .  .  .  .  .  .

Estimamos que a la luz de lo expuesto en la jurisprudencia
y la doctrina *debemos señalar una vez más los criterios para
evaluar la credibilidad del testimonio estereotipado.* Estas
pautas, la mayoría de las cuales, si no la totalidad, se han sus-
crito por este Tribunal, pueden ayudar a armonizar los di-
versos intereses envueltos.

*En primer término,* reiteramos que todo testimonio estere-
otipado *debe escudriñarse con especial rigor.*

*Segundo,* tanto los casos de la-evidencia-abandonada-o-lan-
zada-al-suelo como los casos del acto-ilegal-a-plena-vista de-
ben, en ausencia de otras consideraciones, *inducir sospecha
de la posible existencia de testimonio estereotipado.*

*Tercero,* si el testimonio es inherentemente irreal o impro-
bable debe ser rechazado.

*Cuarto,* el testimonio estereotipado puede perder su condi-
ción de tal si, *yendo más allá de los datos indispensables para
probar los requisitos mínimos de un delito,* se le rodea de las
circunstancias en que funciona el agente, el término de su in-
vestigación, los resultados obtenidos fuera del caso en trá-
mites y otros detalles. Se exhorta en este sentido a recordar
los factores mencionados sobre este particular en *Pueblo* v.
*Ayala Ruiz,* supra y casos subsiguientes.

*Quinto,* por el contrario, la presencia de contradicciones,
lagunas o vaguedades en el testimonio debe tender a reforzar
el recelo con que hay que escuchar esta clase de declaraciones.

*Sexto,* no debe olvidarse que el peso de la prueba de librar el
testimonio estereotipado de sospecha recae en el fiscal. *Tal*

*peso no se descarga con la extracción del testimonio flaco y descarnado a que se refirió Ayala Ruiz.* [Citas omitidas.]

Si examinamos la evidencia en este caso a la luz de estos criterios puede observarse *que estamos claramente ante una de las versiones más manidas del testimonio estereotipado. Es difícil creer que una persona que tiene una caja de cigarrillos Winston en su bolsillo, que es legal poseerlos, arroje al suelo la cajetilla cuando ve un agente que se acerca para que éste la pueda ocupar y encuentre en ella tres cigarillos de marihuana.* La prueba de cargo fue también flaca y descarnada a la luz de los criterios expuestos en *Ayala Ruiz.* Véase: *Pueblo v. Rosado Rosado,* supra.

*Se revocará por tanto la sentencia que dictó el Tribunal Superior.* (Énfasis suplido y en el original.) *Pueblo v. González del Valle,* supra, págs. 375–379.

Procede que se señale que la citada norma jurisprudencial fue expresamente ratificada por este Tribunal en la decisión que se emitiera en *Pueblo v. Almodóvar,* 109 D.P.R. 117, 120 (1979).(2)

## II

Como podemos notar, el citado caso de *Pueblo v. González del Valle,* ante, establece unas comprensivas guías o criterios con el propósito de ayudar a los jueces en su difícil y delicada misión de determinar si el testimonio de los agentes del orden público en esta clase de situaciones es o no uno confiable y digno de crédito. Todo aquel que haya practicado

---

(2) Es correcto que este Tribunal en *Pueblo v. Ortiz Martínez,* 116 D.P.R. 139 (1985), rechazó un planteamiento del allí apelante a los efectos de que la evidencia del Estado había sido ocupada ilegalmente a base del argumento originalmente esgrimido en *Pueblo v. González Charón,* ante, a los efectos de que la garantía constitucional contra registros y allanamientos ilegales no cubre la incautación de evidencia que es abandonada.

Si bien ello es cierto, un examen de la prueba presentada por el Estado en ese caso demuestra que la misma no era "flaca y descarnada", ya que el testimonio presentado por los testigos del Ministerio Fiscal iba "más allá de los datos indispensables para probar los requisitos mínimos de un delito . . .". *Pueblo v. González del Valle,* 102 D.P.R. 374, 378 (1974).

la profesión de abogado en este campo del derecho a nivel de instancia puede dar fe de que dicha norma, producto la misma de la experiencia que a través de muchos años ha experimentado este Tribunal como institución, es una realmente sabia.

Si aplicamos al presente caso las guías o criterios esbozados en *Pueblo v. González del Valle*, ante, la determinación de que la evidencia en controversia es inadmisible no se hace esperar.

De acuerdo con lo declarado por los agentes del orden público el apelante —el cual llevaba en sus manos una caja llena de cartones de cigarrillos— al percatarse de la presencia de dichos agentes, *en palabras de la propia opinión mayoritaria*, "asumió una actitud nerviosa" y procedió a sacar "de la caja una envoltura de papel de aluminio y en forma sospechosa la lanzó *en dirección al mostrador de la barra*", cayendo la misma "cerca de la entrada del mostrador". (Énfasis suplido.) Opinión mayoritaria, pág. 569.

Nos enfrentamos claramente en el presente caso a un testimonio "flaco y descarnado" que acomodaticiamente se circunscribe a producir los datos indispensables para probar los requisitos mínimos de un delito. Volvemos a enfrentarnos al desacreditado y descartado testimonio de que "lo miré, me vió, tiró al piso, y yo recogí".

De la misma manera que a este Tribunal, en el año de 1974 en el caso de *Pueblo v. González del Valle*, ante, le resultó "difícil creer que una persona que tiene una caja de cigarrillos Winston en su bolsillo, que es legal poseerlos, arroje al suelo la cajetilla cuando ve un agente que se acerca para que éste la pueda ocupar y encuentre en ella tres cigarrillos de marihuana",(3) nos resulta a nosotros igualmente difícil de aceptar que en el presente caso el apelante, quien se

---

(3) *Pueblo v. González del Valle*, ante, pág. 379.

encontraba en su negocio con una caja llena de cartones de cigarrillos en sus manos, lo cual es completamente legal, saque de dicha caja una envoltura de aluminio, de las comúnmente utilizadas en el tráfico de drogas, y la tire en dirección al mostrador de su negocio, facilitando así que los agentes del orden público pudieran ver y ocupar legalmente la misma.

Si dicha versión no constituye el testimonio estereotipado que hace más de veinticinco años rechazamos, en palabras fuertes y enérgicas, en el caso de *Pueblo v. Rosado Rosado*, ante, no sabemos qué lo constituye.[4]

### III

Como hemos visto, la aplicación de lo resuelto por este Tribunal en los casos antes citados de *Pueblo v. Rosado Rosado*, ante, *Pueblo v. González del Valle*, ante, y *Pueblo v. Almodóvar*, ante, tiene como consecuencia inexorable la confirmación de la determinación del foro de instancia a los efectos de que procede la supresión de la evidencia en controversia. Con el obvio propósito de evitar la aplicación de las referidas decisiones sin llegar al extremo de revocarlas, y de paso introducir una nueva filosofía conservadora, una mayoría de los integrantes de este Tribunal argumenta que como en el presente caso el juez de instancia no expuso las razones que tuvo para suprimir la evidencia se debe "partir de la premisa de que el testimonio de los agentes le mereció crédito, o sea, que suprimió la evidencia a base de la interpretación del derecho aplicable". Opinión mayoritaria, pág. 574 esc. 5.

Tenemos que confesar que nos ha resultado verdaderamente difícil aceptar el hecho de que este Tribunal haya sido

---

[4] Debe señalarse que la ocupación y registro, por parte del segundo agente del orden público de la "caja de fósforos" —luego de que el apelante había sido arrestado por razón del contenido de la envoltura de aluminio— es igualmente ilegal ya que la misma es consecuencia directa del arresto ilegal efectuado.

capaz de hacer una aseveración como la transcrita. Dicha inferencia no sólo es errónea sino que altamente improcedente. Aparte del hecho de que con toda probabilidad la razón principal detrás de la decisión emitida por el juez de instancia de suprimir la evidencia en el presente caso precisamente lo fue que el testimonio de los agentes del orden público no le mereció crédito alguno, cabe preguntarse: ¿cómo es posible que un tribunal de apelaciones como el nuestro base su decisión en un caso en particular en una mera especulación cuando lo que está "en juego" en el mismo lo es nada menos que *la libertad* de una persona?

Como expresáramos anteriormente, esta acomodaticia "teoría" le permite a la mayoría del Tribunal *obviar* la norma establecida en *Pueblo v. González del Valle*, ante, y resolver los casos futuros exclusivamente a base de una *interpretación teórica* sobre si la evidencia arrojada por el imputado de delito es una que se puede considerar o no "abandonada". Esto es, *en ausencia de una determinación expresa por parte del juez de instancia de que el testimonio de los agentes no le merece crédito*, la nueva norma jurisprudencial faculta a este Tribunal para de un plumazo "convertir" en obsoleta la sabia y jurídicamente correcta jurisprudencia sobre testimonio estereotipado.

### IV

Aun desde esa "nueva perspectiva" la decisión emitida en el presente caso resulta ser palpablemente errónea. No obstante la "nueva norma" que hoy se establece para esta clase de situaciones, es imposible sostener la decisión emitida por cuanto resulta verdaderamente difícil aceptar la conclusión a la que llega una mayoría de los integrantes del Tribunal a los efectos de que la evidencia ocupada es admisible por razón de que la misma fue "abandonada".

Debe mantenerse presente, en primer lugar, que el "abandono" de una evidencia por parte de una persona no se

presume y que ese hecho deberá ser probado por el que así lo sostiene —de ordinario, el Ministerio Público— en forma inequívoca, clara y decisiva. *Friedman v. United States*, 347 F.2d 697, 704 (8vo Cir. 1965). En segundo término, el concepto de que aquello que uno "expone (abandona) al público" no está protegido por la Cuarta Enmienda de la Constitución federal *es uno cualificado.* Véanse: *Katz v. United States*, 389 U.S. 347, 351 (1967); *People v. Loveless*, 400 N.E.2d 540 (1980). Esto es, no se puede concluir *automáticamente* que un objeto ha sido "abandonado" por el mero hecho de que el mismo haya sido "expuesto" al público por su poseedor en un sitio público, ya arrojándolo al suelo, ya dejándolo sobre una mesa, etc. *Antes de arribar a una u otra conclusión, necesariamente hay que examinar las circunstancias y hechos específicos de cada caso en particular.* Como se expresara en *Friedman v. United States*, ante, el "acto de abandonar un objeto" es un hecho o conclusión última a la que se llega después de darle debida consideración tanto *al acto en sí* llevado a cabo como *al propósito o intención* de la persona que efectuó el mismo.

Recordaremos que en el caso ante nuestra consideración se trata del *dueño* de un negocio que, según la versión de los agentes del orden público, *lanza o tira una envoltura en dirección del mostrador de su negocio, detrás del cual se encontraba uno de los empleados del mismo.* ¿Se puede decir que el Estado, a base de esa prueba, probó en forma clara e inequívoca que esa evidencia había sido "abandonada"? ¿No resulta igualmente razonable la inferencia de que esa persona no tenía intención alguna de "abandonar" dicha envoltura y que, por el contrario, su intención obvia era que su empleado obtuviera la posesión de la misma? Somos del criterio que siendo ambas alternativas igualmente factibles, el Estado no cumplió con su obligación de probar que dicha evidencia efectivamente había sido "abandonada". *Friedman v. United States*, ante; *Katz v. United States*, ante.

Por las razones antes expresadas, confirmaríamos la resolución recurrida que decretó la supresión de la evidencia ocupada.