EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JULIO AYALA RUIZ, acusado y apelante.

*Número:* CR-65-367      *Resuelto:* 30 de junio de 1966

*César Andréu Ribas,* abogado del apelante; *J. B. Fernández Badillo, Procurador General,* y *Nilita Vientós Gastón, Procuradora General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

En *Pueblo* v. *Seda,* 82 D.P.R. 719 (1961), expresamos que el agente encubierto es un arma de investigación que es necesaria para la persecución eficaz de ciertos delitos que, por su característica esencial de clandestinidad, de otro modo permanecerían impunes. Advertimos, sin embargo, que si bien de ordinario la declaración única del agente sobre la celebración de una transacción de venta—en aquel caso de números de bolita—era suficiente para sostener una convicción, los tribunales de instancia tenían que ser cautelosos en la aquilatación de la prueba, especialmente en los casos en que se omitía presentar otra evidencia, bien documental o de otra índole.

Desde entonces hemos revisado numerosas convicciones por infracciones a la Ley de Bolita en que el único testimonio ofrecido para establecer el delito es el del agente encubierto. Parece que nuestra posición en *Seda* se ha interpretado como una licencia franca y abierta para enjuiciar en estos casos a base de la versión estereotipada, que en idénticos términos describe la comisión de la ofensa.[1]

---

[1] Ya en *Pueblo* v. *Luciano Arroyo,* 83 D.P.R. 573 (1961), habíamos manifestado igual preocupación en cuanto al contenido de las declaraciones juradas que sirven de base a la expedición de órdenes de allanamiento. Caracterizando la situación dijo el Juez Serrano, en expresión imperecedera, que "Los jueces no debemos, después de todo, ser tan inocentes como para creer declaraciones que nadie más creería." (pág. 582).

Si a este hecho unimos el largo período de tiempo que discurre entre la ocurrencia de la transacción, la prestación de la declaración jurada por el agente a los fines de la determinación de causa probable y la presentación de la acusación correspondiente, fácil es comprender que se coloca a los acusados en una posición difícil. Esta situación, tan frecuente como casos revisamos, produce en nuestra conciencia una gran insatisfacción y, evoca la existencia de dudas fundadas, no tanto sobre la eficacia del método de investigación—aunque indispensable, debe utilizarse en forma compatible con las más elementales normas de justicia—sino en su instrumentación diaria.

No intentamos definir con exactitud los extremos que deben cubrirse en el testimonio del agente encubierto. Comprendemos que en nuestra misión de pautar en la administración de la justicia criminal la gama de situaciones es demasiado extensa para poder exigir normas fijas e invariables. Sólo intentaremos establecer unas guías mínimas para garantizar la pureza de los procedimientos y disipar cualquier duda, con toda probabilidad infundada, de que se sanciona en nuestro medio el encausamiento de determinadas personas que se reputan como infractores de la ley (*crime by reputation*).

El día 16 de septiembre de 1962, un domingo, alrededor de las 9:30 A.M., un agente encubierto observó al apelante a una distancia de 5 a 10 pies mientras departía con otras personas en una estación de servicio para automóviles situada a la entrada de la Urbanización Santiago Iglesias. Dice en un solo parlamento: "pude ver que le preguntaba qué número iba a jugar y ellos le decían el número; yo me acerqué y entonces él me dijo: 'Tú también vas a jugar?' y yo le dije que sí. Entonces le dí un dólar y le dije que me jugara el 912; me dijo que era por las tres últimas cifras de la lotería de Puerto Rico; entonces cogió el peso y procedió a apuntar en una libreta de estas de escuela que dicen por encima

'Composition', negras, la cual tenía números de tres cifras seguidas por un guión y otras cantidades a la derecha. Después de haber hecho las transacciones se montó en un carro con tablilla 706-296 y se fue". En el contrainterrogatorio declaró no recordar el día de la semana en que ocurrió la transacción; admitió que conocía a una de las personas que conversaba con el acusado, mas no a las otras dos, a quienes no tomó sus nombres "porque eso [da] malicia"; que llegó a la estación de servicio en compañía de un amigo nombrado Juan Vélez Méndez, pero que éste no presenció la transacción; que no conocía al apelante antes de los hechos; que no lleva un registro diario del cual pueda determinarse su paradero en un día específico, sino apuntes en una libreta que luego se pasan a un informe de violaciones que se entrega al jefe inmediato; que no recibió contraseña alguna de la jugada.

La defensa trató de establecer una coartada situando al apelante en la fecha y hora indicada en la casa club de los empleados del Hipódromo El Comandante, lugar que éste frecuentaba durante los días de carreras. Al efecto se presentó el testimonio del cajero del hipódromo y el del propio acusado.

A pesar de que estos hechos ocurrieron el 12 de septiembre de 1962, no es hasta el 22 de marzo siguiente, más de seis meses después, que el agente encubierto presta declaración ante un magistrado para la determinación de causa probable. ¿Qué justificación existe para esta demora? Ninguna se ofrece. No hay duda de que si la declaración se hubiese prestado inmediatamente la garantía de veracidad del testimonio del agente sería mayor y más confiable. No puede aducirse que con ello se pone en peligro la efectividad de la investigación confidencial que se está realizando pues en forma alguna se revela la identidad del encubierto ante los posibles infractores de la ley en la zona en que se realiza la investigación. Insistimos, ¿por qué esta tardanza?

¿No es preferible que el testimonio se produzca cuando los hechos están más frescos en la memoria, sin que se tenga que depender casi exclusivamente de unos apuntes que tampoco se presentan luego?

Analizando el contenido del testimonio prestado por el agente se observará de inmediato que se reduce a los particulares mínimos necesarios para establecer la infracción. Precisamente debido a la situación en que se coloca al acusado es necesario que estos particulares se rodeen de ciertos detalles para que se coloque al juzgador en posición de conferirle a ese testimonio el grado óptimo de credibilidad. Cuando el agente ocupa la silla de los testigos ya no existe peligro alguno de que se malogre la investigación que se le encomendó. No es improcedente revelar el término durante el cual se extendió la investigación, el área cubierta, los resultados obtenidos señalando las causas obtenidas contra otros infractores atrapados en la redada, y otros detalles relacionados. Además, en la versión estereotipada que con tanta frecuencia se produce, generalmente el agente observa que el infractor está realizando transacciones con otras personas cuya identidad es usualmente desconocida. No se requiere una gran agudeza para poder obtener información sobre el nombre de estas personas sin arriesgarse a ser descubierto. Igualmente, ¿qué razón existe para que se destruyan las anotaciones que el agente toma a raíz de cada transacción? Todas estas lagunas en la presentación del testimonio del agente deben ser cubiertas.

La situación descrita demuestra que no es remota la posibilidad de que en su afán de erradicar el mal social que entraña el juego ilegal de la bolita se incluya a personas inocentes. El método de investigación debe mejorarse para evitar que el pueblo pierda la fe en la justicia. Corresponde a las autoridades hacer los ajustes necesarios.

■ Retornando a los hechos del presente caso, todo se reduce a un conflicto de prueba. Es el testimonio flaco y

descarnado del agente frente al del acusado también vago e impreciso. Ante esa alternativa, en ausencia de una declaración más explícita del agente, y considerando el hecho adicional apuntado del largo período transcurrido entre la alegada comisión de la ofensa y la prestación de la declaración jurada a los fines de la determinación de causa probable, le concedemos al apelante el beneficio de una duda razonable.

*Se revocará la sentencia dictada por el Tribunal Superior, Sala de San Juan, en 1 de octubre de 1963, y se decretará la absolución del apelante.*

El Juez Asociado Señor Santana Becerra no intervino.