EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* EGIDIO GONZÁLEZ DEL VALLE, acusado y apelante.

*Número:* CR-73-135  *Resuelto:* 31 de mayo de 1974

*Miguel A. Velázquez Rivera, Jorge L. Chaar Cacho* y *C. R. Urrutia de Basora,* abogados del apelante; *Myriam Naveira de Rodón, Procuradora General,* y *Candita R. Orlandi, Procuradora General Auxiliar,* abogadas de El Pueblo.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

El testimonio del agente que intervino con el apelante es idéntico al presentado en una serie de casos que recientemente hemos revocado. Declaró el agente que había un grupo de personas reunidas en el Parterre en Aguadilla y que al darse cuenta que se acercaba a ellos, uno del grupo exclamó: "Ahí vienen los camarones"; que el apelante entonces ". . . Metió la mano derecha al bolsillo izquierdo de la camisa y sacó una cajetilla de cigarrillos Winston y la tiró debajo de un carro, de un Chevrolet del 1961, colorado, la caja de cigarrillos dio abajo, en el filo del guardalodo trasero, cayendo abajo del vehículo. Yo recogí la caja, la abrí y dentro de la caja habían

tres cigarrillos, tres envolturas a manera de cigarrillos, lo que comúnmente se usa en el tráfico ilegal de marihuana. Yo al ver esa envoltura procedí a arrestar a Egidio [el acusado]."

■ El caso aquí planteado exige que reiteremos las reglas referentes al testimonio estereotipado en casos de narcóticos y bolita. La necesidad de utilizar agentes, encubiertos o no, para atacar el nocivo tráfico de drogas, así como la admisibilidad de su testimonio en circunstancias adecuadas, se ha reconocido en ésta y otras comunidades. *Pueblo* v. *Soto Zaragoza*, 94 D.P.R. 350, 352 (1967); Note, *Probable Cause and the Confidential Informer in the United States Supreme Court*, 37 U.M.K.C. L. Rev. 352 (1969); Comment, *Present and Suggested Limitations on the Uses of Secret Agents and Informers in Law Enforcement*, 41 U. Colo. L. Rev. 261 (1969). Los agentes encubiertos del orden desempeñan una tarea delicada y difícil en la campaña contra el crimen. Obran usualmente a riesgo de su vida y debe reconocerse la importancia de su labor. Del otro lado, es doctrina establecida en Puerto Rico y otras localidades que el uso del testimonio de agentes encubiertos y confidentes o el uso de declaraciones estereotipadas por cualquier otro tipo de testigo, debe ser objeto de escrutinio riguroso para frenar el celo excesivo que pueda, vía declaraciones inexactas o falsas, vulnerar los derechos de ciudadanos inocentes. *Pueblo* v. *Ayala Ruiz*, 93 D.P.R. 704 (1966); Donnelly, *Judicial Control of Informants*, 60 Yale L.J. 1091, 1093 (1951). Estamos ante una instancia más de la necesidad de equilibrar los intereses en juego, de permitir y estimular la defensa de la comunidad contra un mal corrosivo y la de proteger también los derechos de la ciudadanía, base de toda democracia.

Uno de los testimonios más susceptibles a ataque y causantes de duda en el ánimo judicial es el de la naturaleza indicada. El incremento advertido en otros lugares respecto a formas estereotipadas de declarar arranca particularmente de la decisión del Tribunal Supremo de Estados Unidos en *Mapp*

v. *Ohio*, 367 U.S. 643 (1961). Comment, *Police Perjury in Narcotics "Dropsy" Cases: A New Credibility Gap*, 60 Geo. L.J. 507 (1971). La misma situación es objeto de comentario por este Tribunal en *Ayala Ruiz*, supra. *Mapp*, como se recordará, prohibió la admisión en los tribunales estatales de evidencia obtenida en violación de la Cuarta Enmienda de la Constitución de los Estados Unidos, referente a allanamientos o registros irrazonables. Esto era así en Puerto Rico desde 1952 por disposición expresa de la Sec. 10 del Art. II de nuestra Constitución y aun desde mucho antes. Véase: *Pueblo v. Capriles*, 58 D.P.R. 548 (1941) y casos allí citados.

El testimonio estereotipado, mediante el cual en caso tras caso se declaraba en modo casi idéntico, limitándose el fiscal a probar los elementos mínimos del delito, constituyó a todas luces una manera tentadora de esquivar los rigores de *Mapp* y de la parte citada de la Carta de Derechos de la Constitución de Puerto Rico. *Pueblo v. Soto Zaragoza*, supra, 354, escolio 2.

■ Hemos hecho alusión en varias ocasiones a una de las modalidades más conocidas del testimonio estereotipado: al de la-evidencia-abandonada-o-lanzada-al-suelo. *Pueblo v. Rosado Rosado*, 100 D.P.R. 905 (1972); *Pueblo v. Maysonet Laureano*, 90 D.P.R. 497 (1964). A esta forma de atestiguar es que se le conoce en la jurisprudencia de Estados Unidos como "dropsy testimony", Comment, *Police Perjury in Narcotics "Dropsy" Cases: A New Credibility Gap*, 60 Geo. L.J. 507 (1971).

Existen, sin embargo, otras modalidades, a veces no reconocidas como tales, del testimonio estereotipado, particularmente la del acto-ilegal-a-plena-vista en transacciones que normalmente se amparan en la clandestinidad. *Police Perjury; An Interview with Martin Garbus*, 8 Crim. L. Bull. 363, 372 (1972). Hemos señalado en otras ocasiones los peligros de este modo de declaración con relación específica a casos de narcóticos y bolita. *Pueblo v. Luciano Arroyo*, 83

D.P.R. 573 (1961); *Pueblo* v. *Serrano Nieves,* 93 D.P.R. 56 (1966).

■ Estimamos que a la luz de lo expuesto en la jurisprudencia y la doctrina debemos señalar una vez más los criterios para evaluar la credibilidad del testimonio estereotipado. Estas pautas, la mayoría de las cuales, si no la totalidad, se han suscrito por este Tribunal, pueden ayudar a armonizar los diversos intereses envueltos.

En primer término, reiteramos que todo testimonio estereotipado debe escudriñarse con especial rigor.

Segundo, tanto los casos de la-evidencia-abandonada-o-lanzada-al-suelo como los casos del acto-ilegal-a-plena-vista deben, en ausencia de otras consideraciones, inducir sospecha de la posible existencia de testimonio estereotipado.

Tercero, si el testimonio es inherentemente irreal o improbable debe ser rechazado.

Cuarto, el testimonio estereotipado puede perder su condición de tal si, yendo más allá de los datos indispensables para probar los requisitos mínimos de un delito, se le rodea de las circunstancias en que funciona el agente, el término de su investigación, los resultados obtenidos fuera del caso en trámites y otros detalles. Se exhorta en este sentido a recordar los factores mencionados sobre este particular en *Pueblo* v. *Ayala Ruiz,* supra y casos subsiguientes.

Quinto, por el contrario, la presencia de contradicciones, lagunas o vaguedades en el testimonio debe tender a reforzar el recelo con que hay que escuchar esta clase de declaraciones.

■ Sexto, no debe olvidarse que el peso de la prueba de librar el testimonio estereotipado de sospecha recae en el fiscal. Tal peso no se descarga con la extracción del testimonio flaco y descarnado a que se refirió *Ayala Ruiz. Police Perjury in Narcotics "Dropsy" Cases: A New Credibility Gap,* supra, págs. 509, 523; *People* v. *McMurty,* 64 Misc.2d 63, 314 N.Y.S.2d 194 (N.Y.C. Crim. Ct. 1970).

◼ Si examinamos la evidencia en este caso a la luz de estos criterios puede observarse que estamos claramente ante una de las versiones más manidas del testimonio estereotipado. Es difícil creer que una persona que tiene una caja de cigarrillos Winston en su bolsillo, que es legal poseerlos, arroje al suelo la cajetilla cuando ve un agente que se acerca para que éste la pueda ocupar y encuentre en ella tres cigarrillos de marihuana. La prueba de cargo fue también flaca y descarnada a la luz de los criterios expuestos en *Ayala Ruiz*. Véase: *Pueblo* v. *Rosado Rosado*, supra.

*Se revocará por tanto la sentencia que dictó el Tribunal Superior.*

El Juez Asociado Señor Martín, disintió.