El Pueblo de Puerto Rico, apelado, *v.* Ángel Rodríguez Cruz, acusado y apelante.

*Número:* CR-79-8      *Resuelto:* 14 de abril de 1980

*Francisco Seise García,* abogado del apelante; *Héctor A. Colón Cruz, Procurador General,* y *Rose Mary Corchado Lorent, Procuradora General Auxiliar,* abogados de El Pueblo.

SENTENCIA

El agente que intervino con el apelante según se relata en la exposición narrativa de la prueba declaró:

". . . Que iba uniformado, que iban en dirección del pueblo de Ciales hacia el Barrio Pozas; que al llegar a un puente que hay en dicho Barrio observó varios vehículos mal estacionados sobre la vía de rodaje; que al ver dichos vehículos se detuvo para que movieran los mismos; que al acercarse al grupo, que era como de cinco muchachos, luego de detenerse como a ocho o diez pies de los vehículos, vio que el acusado Angel Rodríguez Cruz y Jorge L. García Cartagena dejaron caer al piso algo, que según él, era sospechoso; que Angel Rodríguez Cruz sacó lo que dejó caer al piso del bolsillo derecho del pantalón y García Cartagena parece que la tenía en la mano; que García Cartagena fue el primero en tirar la caja, después Rodríguez la tiró. En el puente no había luz pero en un negocio cercano había; procedió a recoger lo que dejaron caer al piso que eran dos cajas de fósforos marca Tres Estrellas y que en su interior contenían picaduras de supuesta marihuana; que inmediatamente puso bajo arresto a los acusados.

Que luego entregó la evidencia en el Cuartel de la Policía a eso de las 11:30 de la noche al Agente Rosario Morales, quien salió para el laboratorio de Aguadilla para el correspondiente análisis.

Que se le expidió a cada conductor un boleto por falta administrativa. Que notó que las personas que había en el lugar se pusieron nerviosos aunque no sospechaba nada más. Que no vio a nadie fumando en dicho lugar."

Como se verá de lo transcrito la declaración se limitó a exponer que el apelante al ver al agente dejó caer algo en el piso que le pareció sospechoso y que resultó ser una caja de

fósforos, que no vio a nadie fumando, que los que allí estaban se pusieron nerviosos, aunque el agente no sospechaba nada y que al ocupar la caja de fósforos contenía lo que resultó ser marihuana.

Este testimonio no superó las exigencias de *Pueblo* v. *González del Valle*, 102 D.P.R. 374 (1974); *Pueblo* v. *Rosado Rosado*, 100 D.P.R. 905 (1972); *Pueblo* v. *Maysonet Laureano*, 90 D.P.R. 497 (1964) y la serie de casos que se inició con *Pueblo* v. *Luciano Arroyo*, 83 D.P.R. 573 (1961) y *Pueblo* v. *Ayala Ruiz*, 93 D.P.R. 704 (1966). Es el típico testimonio estereo-tipado de "evidencia-abandonada o lanzada-al-suelo", y en él no hay más. Bajo estas circunstancias dicho testimonio resulta insuficiente por sí solo.

Procede revocar la sentencia apelada.

Así lo pronunció y manda el Tribunal y certifica el Secretario. El Juez Presidente Señor Trías Monge emitió opinión concurrente. Los Jueces Asociados Señores Martín y Negrón García disintieron sin opinión.

(Fdo.) Ernesto L. Chiesa
*Secretario*

—O—

Opinión concurrente del Juez Presidente, Señor Trías Monge.

San Juan, Puerto Rico, a 14 de abril de 1980

Las circunstancias específicas de este caso, que revelan otras facetas del problema considerado en *Pueblo* v. *González del Valle*, 102 D.P.R. 374 (1974), motivan esta expresión separada. Examinemos los hechos.

El Ministerio Público acusó al apelante de varias infrac-ciones a la Ley de Sustancias Controladas, Ley Núm. 4 de 23 de junio de 1971, (24 L.P.R.A. sec. 2101 *et seq.*). Se le acusó específicamente de poseer con intención de distribuir, transpor-tar y ocultar marihuana para el 7 de febrero de 1975, sin autorización de ley. Por ser el acusado, de oficio carpintero, L.S. 14, "un muchacho joven que no ha tenido récord y que ha

vivido toda la vida en el Barrio Pesas (Pozas) de Ciales", L.S. 7, el Tribunal Superior le rebajó a la mitad la fianza a prestar antes del juicio.

Los cargos se ventilaron en juicio por tribunal de derecho el 1ro de julio de 1975. Siete días más tarde el tribunal lo halló culpable y le impuso penas de uno y medio a tres años en un caso y de uno a tres años en el otro, a cumplirse concurrentemente. El convicto apeló. Señala que erró el tribunal de instancia al resolver que "la prueba desfilada era suficiente para encontrar culpable al acusado tanto del cargo de transportación de la sustancia controlada conocida por marihuana como del cargo de la posesión con la intención de distribuir dicha sustancia".

La prueba de cargo consistió en los testimonios del sargento Luis Rivera Albino, el agente Rosario Morales y el químico Luis A. Rivera Quiles. El sargento Rivera Albino fue el único testigo ocular presentado.

Rivera declaró que para la noche de los hechos, alrededor de las once, iba uniformado en un vehículo Volkswagen rotulado, mas con la luz rotatoria de aviso apagada. Lo acompañaba el teniente Sánchez y el agente Montes. Iban en dirección de Ciales al barrio Pozas. Al llegar a un puente en el barrio observó varios coches mal estacionados y se detuvo para que los movieran de allí. Al acercarse a un grupo de cinco jóvenes congregados allí el sargento vio alegadamente que el acusado y un compañero dejaron caer algo al piso. El sargento Rivera Albino recogió los objetos que eran dos cajas de fósforos Tres Estrellas. Su interior contenía picadura de supuesta marihuana.

El agente Rosario Morales declaró que recibió en Ciales esa noche las cajas de fósforos y las rotuló. Las entregó al químico, quien expresó en su testimonio que el análisis de la picadura dio positivo de marihuana.

El problema que se nos presenta aquí de nuevo es el de evaluar la credibilidad en un caso de prueba estereotipada. La modalidad envuelta en este pleito es la de la prueba-

594

lanzada-al-suelo. La frecuencia de testimonios estereotipados de este género o de los conocidos como el acto ilegal-a-plena-vista y el de la prueba abandonada hace aconsejable que nos expresemos con mayor detalle sobre su evaluación.

Estudios sobre este asunto revelan que un efecto principal de *Mapp* v. *Ohio*, 367 U.S. 643 (1961), (¹) fue un aumento alarmante en el uso de testimonios estereotipados. Su empleo no se limita a los agentes encubiertos. Las estadísticas estadounidenses revelan que, a partir de *Mapp*, la policía uniformada comenzó a utilizar con más frecuencia que otros agentes el recurso de la prueba-lanzada-al-suelo. Comment, *Effect of Mapp v. Ohio on Police Search-and-Seizure Practices in Narcotics Cases*, 4 Colum. J.L. & Soc. Prob. 87, 94 (1968). La conclusión generalmente alcanzada es que "la policía uniformada ha estado fabricando razones para el arresto en los casos de narcóticos a fines de evadir los requisitos de *Mapp*". *Id.*, pág. 95; Comment, *Police Perjury in Narcotics "Dropsy" Cases: a New Credibility Gap*, 60 Geo. L.J. 507 (1971); Oaks, *Studying the Exclusionary Rule in Search and Seizure*, 37 U. Chi. L. Rev. 665, 696–99 (1970). La norma de *González del Valle* rige en consecuencia la conducta, tanto de los agentes encubiertos como de la policía uniformada.

De los hechos reseñados derivan las reglas sentadas en *Pueblo* v. *Luciano Arroyo*, 83 D.P.R. 573 (1961); *Pueblo* v. *Ayala Ruiz*, 93 D.P.R. 704 (1966); *Pueblo* v. *Soto Zaragoza*, 94 D.P.R. 350 (1967); *Pueblo* v. *Rosario Torres*, 101 D.P.R. 840 (1973); *González del Valle*, supra; *Pueblo* v. *Almodóvar*, 109 D.P.R. 117 (1979), y en muchos otros casos. El análisis de esta jurisprudencia revela el esfuerzo de este Tribunal por largos años para erigir salvaguardas que propicien las condiciones óptimas para la evaluación de la credibilidad de los testigos de cargo en estas causas. La estructuración de estas salvaguar-

---

(¹) *Mapp* les extendió en 1961 a los estados el requisito constitucional establecido para las cortes federales en *Wolf* v. *Colorado*, 338 U.S. 25 (1949), de excluir prueba obtenida mediante un registro ilegal. Esta regla rige en Puerto Rico desde mucho antes de *Mapp*, ya que es parte del Art. II, Sec. 10, de nuestra Constitución.

das ha sido un proceso continuo y a la par mesurado. Este Tribunal viene obligado a fomentar y escudar dos valores: la búsqueda de la verdad del modo más íntegro posible y el castigo del crimen. El pronto y severo castigo del crimen es una necesidad imprescindible de toda sociedad, mas si esa sociedad aspira a ser democrática el castigo del crimen tiene que cumplir con las exigencias del debido proceso de ley.

En *Almodóvar*, supra, expresamos que cada género de controversia puede entrañar modos diferentes de sopesar y proteger los valores envueltos. En casos como el de autos debemos señalar que existen ciertos métodos en particular que pueden servir de ayuda al juzgador de los hechos para formar juicio sobre la credibilidad del único testigo de cargo que presencia el alegado delito. En *Pueblo* v. *Luciano Arroyo*, 83 D.P.R. 573, 575–579 (1961), por ejemplo, se demostró la frecuencia con que el agente había acudido, en forma prácticamente idéntica, al uso de testimonio estereotipado en numerosas causas. Otra salvaguarda es la solicitud de instrucciones al jurado, cuando se acude a declaraciones estereotipadas, sobre las normas establecidas por nuestra jurisprudencia para evaluar testimonios de esta índole. La preparación de datos completos sobre el uso en Puerto Rico de testimonios estereotipados constituiría también una información valiosa.

A la luz de nuestra jurisprudencia considero que la declaración del sargento Rivera Albino incumple con los requisitos imprescindibles para librarlo de la condición de testimonio estereotipado. La sentencia del Tribunal pone al desnudo su índole descarnada.

Concurro por tanto con la revocación de la sentencia impuesta por el cargo de transportación. En lo que toca a la condena referente al cargo de posesión con intención de distribuir, estimo también que debe revocarse ya que el Ministerio Público no presentó ni un ápice de prueba referente a la existencia de tal intención.