Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| EL PUEBLO DE PUERTO RICO  Recurrido  v.  JORGE PÉREZ ADORNO  Peticionario | KLCE202500523 | *Certiorari* Procedente del Tribunal de Primera Instancia, Sala de AIBONITO  Caso Núm.: B SC2023G0156 al 0158 B FJ2023G0005  Sobre: Infr. Art. 401 Ley SC (2 casos); Infr. Art. 412 Ley SC; Infr. Art. 285 CP |
|---|---|---|

Panel integrado por su presidente el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Mateu Meléndez, Jueza Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 17 de octubre de 2025.

El 13 de mayo del año en curso, el Sr. Jorge Pérez Adorno (Pérez Adorno o el peticionario) compareció ante este Tribunal de Apelaciones mediante *Petición de Certiorari* en el que nos solicitó la revocación de una Resolución dictada el 26 de marzo de 2025 en la causa de epígrafe; notificada al día siguiente. Por virtud del aludido dictamen, el Tribunal de Primera Instancia, Sala de Aibonito (TPI o foro primario) denegó la solicitud de supresión de cierta evidencia que el peticionario sometió ante su consideración.

Examinado el recurso, con el beneficio de la comparecencia de ambas partes y de la transcripción de las vistas de supresión celebradas en el caso, resolvemos **EXPEDIR** el auto y **CONFIRMAR** la decisión recurrida. Veamos porqué.

**-I-**

Por hechos ocurridos el 4 de mayo de 2023, el Ministerio Público presentó en contra del peticionario cuatro (4) denuncias por transgredir dos

Número Identificador

SEN2025 _____

veces el Art. 401 de la Ley 4 del 23 de junio de 1971, mejor conocida por la Ley de Sustancias Controladas de Puerto Rico; infringir el Art. 4.12 del mismo estatuto; y violentar el Artículo 285 del Código Penal de Puerto Rico de 2012. Es importante señalar que las referidas denuncias son el resultado de una Orden de Allanamiento expedida el 3 de mayo de 2023 en la que la estructura a ser allanada se describió de la siguiente manera:

> Residencia en concreto de dos niveles (nivel a allanarse nivel superior) pintada color crema claro (desgastado) con bordes superior, vigas de balcón superior y palaustres pintados verde menta (desgastado). Si la miramos desde la parte frontal, por el lazo izquierdo de la residencia (nivel superior) tiene una ventana doble tipo miami, color [obscuro] (despintada). Seguida de otra ventana doble, tipo Miami, color [obscuro] (despintada). En la parte frontal tiene una ventana doble, tipo Miami, color [obscuro] (despintada), seguida de otra ventana más pequeña, color [obscuro] (despintada). Luego unas escaleras construidas en concreto con rejas color marrón, las cuales dan acceso al nivel superior donde hay un balcón con rejas color marrón y dentro del balcón tiene de izquierda a derecha una ventana doble, tipo miami, color [obscuro] (despintada), seguido de una puerta color [obscuro] y por último una ventana doble, tipo Miami, color [obscuro] (despintada). Por la parte derecha no tengo visibilidad. Por la parte posterior no tengo visibilidad.

Estimamos meritorio añadir que la orden de allanamiento incluyó la declaración jurada firmada por el Agente Jorge A. Rivera Rivera (Agte. Rivera Rivera). En su juramento el agente recogió las observaciones de la vigilancia que efectuó de la propiedad arriba descrita los días 10, 12, 18, 20 y 21 de abril de 2023. Habiéndose celebrado la vista preliminar, el tribunal determinó causa para acusar al peticionario de los delitos imputados.

Así las acosas, el 4 de mayo de 2024, el peticionario sometió una *Moción Solicitando Supresión de Evidencia* mediante la cual reclamó que procedía eliminar "la evidencia ocupada en la propiedad que queda en los bajos, la cual se realizó sin orden de allanamiento**."** En síntesis, argumentó que la declaración jurada suscrita por el Agte. Rivera Rivera a todas luces constituía un testimonio estereotipado. Específicamente, señaló que las declaraciones incluidas en el testimonio eran altamente sospechosas pues "[n]unca se observan autos en el área, personas, ruidos, actividad humana,

etc., siempre llegan e inmediatamente hay actividad delictiva, nadie los detecta o intervienen con ellos, etc."

En respuesta, el Ministerio Público presentó *Moción en Oposición a Supresión de Evidencia*. En su escrito ripostó que la declaración jurada del Agte. Rivera Rivera relató de forma detallada las características del lugar a registrarse, las personas a detenerse y lo observado. Asimismo, según Fiscalía, se describió con precisión las sustancias controladas que el agente observó durante su vigilancia de forma tal que no le quedó la menor duda de que el peticionario utilizaba la propiedad observada para guardar marihuana y cocaína, así como para efectuar ventas de sustancias controladas. A su vez, negó que las transacciones a simple vista tornaran el testimonio en uno irreal. Por estas y demás razones, aseveró que no procedía la supresión solicitada.

Posterior a esto, el peticionario sometió en el caso una *Moción en Apoyo a Supresión de Evidencia*. Sobre este asunto, el foro primario celebró la vista de supresión de evidencia los días 14 de febrero de 2025, 14 de marzo de 2025 y el 1ro de abril de 2025. En la misma, testificaron el Agte. Rivera Rivera y la Agte. Nancy Espada Ríos (agente Espada). También, como testigos del peticionario, declararon la Sra. Victoria Ortiz; la Sra. Clarymar Ortiz Sangos y el Sr. Ramón Pérez Díaz.

Finalmente, el 15 de abril de 2025, notificada el día 16, el TPI declaró No Ha Lugar la supresión de evidencia. Encontramos sumamente importante la explicación que el foro primario brindó al aplicar el derecho y tomar su decisión. Por esta razón, a continuación, la reproducimos:

> En este caso el tribunal tuvo la oportunidad de examinar la declaración jurada del agente Rivera y compararla con su testimonio en corte. En la vista expuso los actos que hizo para realizar la vigilancia, los cuales fueron el sustento de la declaración jurada en la que basó la solicitud de la orden de registro y allanamiento. Sus manifestaciones coinciden con la declaración jurada. Ahora bien, este tribunal reconoce que en esta última el agente no incluyó ciertos detalles que la defensa logró identificar en la vista. Sin embargo, ninguno de ellos es sustancial ni hace más o menos probable los hechos. Al contrario, el testigo demostró

conocer los detalles, aunque no los incluyó en la declaración jurada. Y para este tribunal sería irrazonable requerir que se incluyeran todos esos detalles en la declaración jurada. Por ende, esas omisiones no hacen la declaración jurada ni el testimonio en corte uno inherentemente irreal o improbable que deba ser rechazado. Adviértase que del testimonio surgió, según requerido en *Pueblo v. González del Valle, supra*, los datos que rodea las circunstancias en que funcionó el agente, el término de su investigación, los resultados obtenidos fuera del caso en trámites y otros detalles. Asimismo, no se encontró contradicciones, lagunas o vaguedades en el testimonio que hagan concluir que es uno estereotipado o poco creíble, así como si fuera falso.

De otro lado, en relación con el registro sin orden, es importante tomar en cuenta lo indicado en la orden de registro y allanamiento expedida en este caso. Allí se describió la residencia a ser allanada de la siguiente manera:

[…]

Ciertamente, en la orden de registro y allanamiento surge que el área a ser allanada es el nivel superior de la estructura. Ahora bien, según se demostró en la vista, el área del terreno en donde se ubica el tubo que fue roto por los agentes en búsqueda de la droga que el acusado arrojó por el inodoro es una compartida entre ambos niveles. Asimismo, el tubo es del sanitario que ambas residencias comparten. Adviértase que ambas residencias son utilizadas por el acusado. De modo que no se puede concluir que ese predio de terreno es únicamente del nivel inferior, sino que también es parte del nivel superior.

Particularmente, son de importancia los testimonios de la agente Nancy Espada Ríos, la Sra. Victoria Ortiz y la Sra. Clarimar Ortiz Santos. La primera expuso que cuando entraron a la residencia, el acusado salía del baño y había descargado el inodoro. En el baño encontraron varias bolsitas de lo que parecía ser droga. Además, el inodoro parecía estar tapado. Por tanto, salieron de la residencia y observaron dónde salía la tubería del baño. **Allí había una plataforma o descanso en tierra que comparten ambas residencias**. En esa área lograron ver un respiradero, el cual tenía una tapa. Esta última fue removida y encontraron droga. Igualmente, rompieron parte de la tubería y encontraron droga.

Por su parte, la Sra. Victoria Ortiz expresó que es dueña junto a otros herederos, de la residencia en la cual se hizo el registro y el allanamiento. Aseveró que la casa es de dos plantas, con dos residencias individuales. En la planta baja no vive nadie. En la planta superior vive el acusado con su pareja, que es hermana de la testigo. Ella fue avisada del registro. Estando allí escuchó un ruido, y fue que los agentes estaban rompiendo un tubo de la casa. **La testigo expresó que el tubo conecta ambas casas**. El tubo sale de la casa y se mete debajo de la tierra.

Por último, la Sra. Clarimar Ortiz Santos testificó que vive en la residencia que fue allanada, en la parte superior. Ella es dueña de la propiedad, junto a sus hermanos. En la parte inferior no vive persona alguna. En medio del registro, ella escuchó que iban a echar agua en un inodoro y que iban a buscar una pompa, la cual utilizaron. A su vez, observó que los agentes removieron un inodoro y utilizaron un *blower* para soplar por la tubería. Posteriormente fue arrestada y al bajar observó que en el patio había un tubo roto. **Durante el contrainterrogatorio aceptó que**

**ella, junto al acusado, eran los únicos que vivían en la residencia y que llegaron a utilizar la residencia inferior para guardar cosas.**

De los testimonios de esas tres personas este tribunal puede concluir que el área del patio que fue allanada por los agentes de la policía no es de u[s]o exclusivo de la parte inferior, sino que es una común entre ambas residencias. Incluso, el tubo es uno que es compartido con ambas. Nótese que en la parte inferior no vive persona alguna y que el acusado lo ha utilizado, incluso para guardar cosas de los familiares. De modo que este tribunal determina que el registro llevado a cabo en esa área está comprendida en la orden de registro y allanamiento, pues se autorizó a realizar el registro de la planta superior (sin limitar exclusivamente su interior) y el tubo que fue registrado es parte de ese nivel.

En este aspecto, este tribunal toma en consideración que el área del tubo puede ser considerada como parte del *curtilage,* es decir, las inmediaciones o estructuras accesorias de un hogar, hasta donde se extiende la protección del derecho a la intimidad. *Pueblo v. Ortiz Rodríguez*, 147 DPR 433, 444 (1999). De igual modo ocurren en las estructuras de vivienda múltiples, en las que los pasillos que conducen a los apartamentos es parte del *curtilage. Pueblo v. Meléndez Rodríguez*, 136 DPR 587 (1994). En ese sentido, es necesario una orden judicial. En el caso de epígrafe, existe una orden judicial que permite el registro al área del nivel superior y este tribunal concluye que esa descripción incluye también el *curtilage*, que en este caso incluye el tubo del patio.

En desacuerdo con la determinación emitida, Pérez Adorno solicitó la reconsideración de lo resuelto. El 29 de abril de 2025, el TPI emitió *Resolución* en la que se negó a reconsiderar. Inconforme aun, el peticionario acude ante nos y señala la comisión de los siguientes dos (2) errores:

Erró el Honorable Tribunal de Primera Instancia, al no suprimir la evidencia obtenida dentro de un tubo de desagüe ubicada en el terreno de una residencia para la cual no tenían orden de allanamiento.

Erró el Honorable Tribunal de Primera Instancia, al no suprimir la evidencia obtenida mediante una Orden de Allanamiento con información falsa y bajo testimonio estereotipado.

Tras varios trámites, entre los que se encuentra la estipulación de la transcripción de la regrabación de los procedimientos, el peticionario sometió *Moción en Solicitud de Elevación de* Autos.[1] Ese día, también presentó su alegato suplementario. Mientras tanto, y luego de haber solicitado extensión de tiempo para ello, el 8 de agosto de este año el Ministerio

---

[1] Por la presente, declaramos No Ha Lugar este escrito.

Público por medio de la Oficina del Procurador General presentó su posición. Siendo ello así, damos por sometido el asunto y resolvemos.

**-II-**

*A.*

*El auto de certiorari*

El vehículo procesal de *certiorari* permite a un tribunal de mayor jerarquía a revisar discrecionalmente las órdenes o resoluciones interlocutorias emitidas por una corte de inferior instancia judicial. Rivera et al. v. Arcos Dorados et al., 212 DPR 194, 195 (2023) al citar a McNeil Healthcare v. Mun. Las Piedras I, 206 DPR 391, 403 (2021) y otros. La característica distintiva del recurso de *certiorari* descansa en la discreción encomendada a este Tribunal de Apelaciones para autorizar su expedición y adjudicar sus méritos. *Íd*. De ordinario, la discreción consiste en "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". BPPR v. SLG Gómez-López, 213 DPR 314 (2023) y casos allí citados. Empero, el ejercicio de la discreción concedida "no implica la potestad de actuar arbitrariamente, en una u otra forma, haciendo abstracción del resto del derecho." *Íd.*

El examen de estos autos discrecionales no se da en el vacío o en ausencia de otros parámetros. 800 Ponce de León v. AIG, 205 DPR 163 (2020). Para ello, la Regla 40 de nuestro Reglamento establece ciertos indicadores a tomar en consideración al evaluar si se debe o no expedir un recurso de *certiorari*.[2]

*B.*

---

[2] Así pues, según la citada regla, estos indicadores son: si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho; si la situación de hechos planteada es Ⴑla más indicada para el análisis del problema; si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia; si el asunto planteado exige una consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados; si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración; si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio; o si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

*La protección contra registros y allanamientos irrazonables.*

Nuestra Constitución consagra la protección del individuo y sus pertenencias contra registros y allanamientos irrazonables. Este amparo, también está consagrado en la Cuarta Enmienda de la Constitución de Estados Unidos[3] y es considerado como una de las libertades más importantes allí establecidas. Véase, <u>Pueblo v. Álvarez de Jesús</u>, 214 PR 753 (2024). A ambas cláusulas constitucionales se les reconoce como la "'matriz de la garantía de los derechos individuales ante la intervención injustificada del Estado con el ciudadano" *Id.,* al citar a <u>Pueblo v. Salamanca Corchado</u>, 210 DPR 582, 590-591 (2022).

En lo concerniente a este tema en particular, la disposición protectora de nuestra Carta Magna dispone como a continuación se transcribe:

> No se violará el derecho del pueblo a la protección de sus personas, casas, papeles y efectos contra registros, incautaciones y allanamientos irrazonables.
>
> No se interceptará la comunicación telefónica.
>
> Sólo se expedirán mandamientos autorizando registros, allanamientos o arrestos por autoridad judicial, y ello únicamente cuando exista causa probable apoyada en juramento o afirmación, describiendo particularmente el lugar a registrarse, y las personas a detenerse o las cosas a ocuparse.
>
> La evidencia obtenida en violación de esta sección será inadmisible en los tribunales. [4]

C.

*La orden judicial*

Las exigencias sustantivas y procesales que nuestra Constitución impone contra los registros y allanamientos se satisfacen a través de nuestras Reglas de Procedimiento Criminal, 34 LPRA Ap. II. En particular, la Regla 231 de Procedimiento Criminal,[5] establece lo siguiente:

> No se librará orden de allanamiento o registro sino en virtud de declaración escrita, prestada ante un magistrado bajo juramento o

---

[3] Emda. IV, Const. EE. UU., LPRA, Tomo 1, ed. 2016.
[4] Art. II, Sec. 10, de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1, ed. 1999, págs. 310-311.
[5] 34 LPRA Ap. II, R. 231

afirmación, que exponga los hechos que sirvan de fundamento para librarla. Si de la declaración jurada y del examen del declarante el magistrado quedare convencido de que existe causa probable para el allanamiento o registro, librará la orden en la cual se nombrarán o describirán con particularidad la persona o el lugar a ser registrado y las cosas o propiedad a ocuparse. La orden expresará los fundamentos habidos para expedirla, y los nombres de las personas en cuyas declaraciones juradas se basare. Ordenará al funcionario a quien fuere dirigida registre inmediatamente a la persona o sitio que en ella se indique, en busca de la propiedad especificada, y devuelva al magistrado la orden diligenciada, junto con la propiedad ocupada. La orden dispondrá que será cumplimentada durante las horas del día, a menos que el magistrado, por razones de necesidad y urgencia, dispusiere que se cumplimente a cualquier hora del día o de la noche.

De lo anterior se desprende que, para la liberación de una orden judicial de registro y allanamiento, se requiere: (1) una declaración bajo juramento o afirmación (2) en la que surja la causa probable; (3) que la orden sea librada por autoridad judicial; y (4) en ella se escriba el nombre o se describa con particularidad la persona o el lugar a ser registrado y las cosas o la propiedad a ocuparse. Además, la orden expresará: (1) los fundamentos para expedir; (2) el nombre de la persona declarante; (3) el decreto a un funcionario público para que registre inmediatamente la persona o el lugar que la orden indique para la búsqueda específica de la propiedad, la cosa o el objeto; (4) con el mandato para que el funcionario devuelva al magistrado el diligenciamiento de la orden con la propiedad ocupada y (5) dispondrá que el diligenciamiento se ejecutará durante el día a menos que, por necesidad y urgencia, el magistrado entienda que se haga en cualquier momento del día. Pueblo v. Salamanca Corchado, *supra,* a las págs.592-593.

La disposición constitucional que establece la protección contra registros y allanamientos requiere para la expedición de una orden de esta naturaleza la determinación de causa probable por autoridad judicial. Esta se examina a base de probabilidades y del estándar de la persona prudente y razonable, aunque depende de las circunstancias de cada caso. *Id.*, págs. 596-597.

En cuanto a la razonabilidad, hay que recordar que esta se cimenta en la figura de una persona prudente y razonable que, de acuerdo con los

hechos aparentes, puede creer que se ha cometido una ofensa imputable.[6] Lo importante es que los hechos observados sean de tal naturaleza que se perciba la configuración de la causa probable necesaria para la liberación de la autorización judicial. Este criterio no debe descansar "en meras sospechas, pero tampoco requiere que el juez quede convencido, fuera de duda razonable, que se está violando la ley, ni que se establezca que la ofensa que se imputa fue verdaderamente cometida". *Id,* págs. 598-599 y casos allí citados. Basta con que el deponente entienda que se ha violado la ley en el lugar que habrá de ser registrado o allanado.

Mientras tanto, el criterio de la probabilidad es un concepto esencialmente objetivo que no debe apoyarse únicamente en elementos subjetivos. Una vez los hechos aparentes y las circunstancias justifiquen la existencia de los motivos fundados, estos deberán exponerse en una declaración jurada. En esta, los motivos fundados consisten en la probabilidad de que exista determinado objeto incautable y que este se encuentra en el lugar que ha de ser allanado. Para la liberación de la orden judicial, la causa probable se fundamenta en que, conforme a los hechos observados y las circunstancias expuestas por el declarante, el magistrado razonablemente puede creer "que el objeto incautable del registro se encuentra en el lugar particular que habrá de ser allanado. *Id.*

*D.*

*La supresión de evidencia*

La disposición constitucional transcrita en el acápite *B.* de esta sección busca disuadir y desalentar a los funcionarios del orden público de violar su protección, así como evitar que el Estado se beneficie de sus propios actos ilegales. Pueblo v. Álvarez De Jesús, *supra,* a la pág. 767. De ordinario, un registro efectuado sin mediar una orden judicial activa una presunción de que fue irrazonable e inválido. *Id.*, págs. 768-769. Si los

---

[6] *Id.*, a la pág. 598.

agentes del Estado obtienen evidencia en violación de estas exigencias, lo recopilado será inadmisible en los tribunales. Pueblo v. Álvarez De Jesús, *supra,* a la pág. 767.

Ahora, existen excepciones a la norma general de que la Policía no puede efectuar un registro sin orden judicial.[7] Estas son:

> (1) un registro incidental a un arresto legal [...]; (2) un registro consentido voluntariamente de forma expresa o implícita [...]; (3) un registro en situación de emergencia [...]; (4) una evidencia ocupada en el transcurso de una persecución [...]; (5) una evidencia a plena vista [...]; (6) cuando el agente del orden público obtiene conocimiento de la existencia del material delictivo a través del olfato[...]; (7) una evidencia arrojada o abandonada; (8) un registro o allanamiento de una estructura abandonada; (9) una evidencia obtenida durante un registro administrativo[...], siempre que se cumpla con las limitaciones expresadas en Blassini et als. v. Depto. Rec. Naturales, 176 DPR 454, 463–464 (2009)]; (10) un registro tipo inventario, [o] (11) una evidencia obtenida en un lugar público — como el aeropuerto — como resultado de la utilización de canes para olfatear [...].[8]

En cuanto a la evidencia obtenida mediante un registro o allanamiento, la Regla 234 de Procedimiento Criminal, 34 LPRA Ap. II, R. 234, constituye el mecanismo adecuado para lograr la supresión de aquella prueba contenida en contravención a lo que nuestra Constitución dispone. Esta, establece que la persona agraviada por un allanamiento o registro ilegal podrá solicitar del tribunal la supresión de cualquier evidencia obtenida en virtud de tal allanamiento o registro o la devolución de lo allanado, por las siguientes razones:

1. Que la propiedad fue ilegalmente ocupada sin orden de allanamiento o registro.

2. Que la orden de allanamiento o registro es insuficiente de su propia faz.

3. Que la propiedad ocupada o la persona o sitio registrado no corresponde a la descripción hecha en la orden de allanamiento o registro.

4. Que no había causa probable para creer en la existencia de los fundamentos en que se basó la orden de allanamiento o registro.

5. Que la orden de allanamiento fue librada o cumplimentada ilegalmente.

---

[7] Empero, la aplicación de estas excepciones no es automática y debe examinarse a la luz de los hechos específicos de cada caso. *Id.*

[8] Pueblo v. Álvarez De Jesus, *supra,* a la pág. 769 y casos allí citados.

6. Que es insuficiente cualquier declaración jurada que sirvió de base a la expedición de la orden de allanamiento porque lo afirmado bajo juramento en la declaración es falso, total o parcialmente.

Ante tales circunstancias, y para poder utilizar la evidencia recopilada, el Ministerio Público tendrá que rebatir la presunción de invalidez y demostrar la existencia de circunstancias excepcionales que hicieron innecesaria la obtención de la orden, y, por lo tanto, que el registro fue legal y razonable. Pueblo v. Álvarez De Jesús, *supra,* pág. 769 y casos omitidos.

*E.*

Establecido todo lo anterior, es meritorio señalar que el testimonio estereotipado es "aquel que se ciñe a establecer los elementos mínimos necesarios para sostener un delito sin incluir detalles imprescindibles para reforzarlo. Pueblo v. Acevedo Estrada, 150 DPR 84, 93 (2000). El uso de declaraciones estereotipadas por cualquier tipo de testigo, en este caso agentes del orden público, debe ser objeto de escrutinio riguroso para evitar que declaraciones falsas o inexactas, vulneren derechos de ciudadanos inocentes *Id.*, al mencionar a Pueblo v. Camilo Meléndez, 148 DPR 539, 558 (1999).

Dada la naturaleza de los testimonios estereotipados, estos deben ser evaluados con particular cuidado para frenar el celo excesivo que pueda, vía declaraciones inexactas o falsas, vulnerar los derechos de ciudadanos inocentes. Pueblo v. Henriquez Rivera, 205 DPR 311 (2020) (*Sentencia*) al citar a Pueblo v. González del Valle, 102 DPR 374, 376 (1974). Al momento de examinarse un testimonio estereotipado, hay que considerar los siguientes criterios:

1. debe escudriñarse con especial rigor;

2. los casos de "evidencia abandonada" o "lanzada al suelo", así como aquellos de "acto ilegal a plena vista"- en ausencia de otras consideraciones- deben inducir sospecha de la posible existencia de testimonio estereotipado;

3. si el testimonio es inherentemente irreal o improbable debe rechazarse.

4. el testimonio estereotipado puede perder su condición de tal si, yendo más allá de los datos indispensables para probar los requisitos mínimos de un delito, se le rodea de las circunstancias en que funciona el agente, el término de su investigación, los resultados obtenidos fuera del caso en trámites y otros detalles;

5. La presencia de contradicciones, lagunas o vaguedades en el testimonio deben tender a reforzar el recelo con que hay que escuchar este tipo de declaraciones;

6. No debe olvidarse que el peso de la prueba de librar el testimonio estereotipado recae en el fiscal. [9]

**-III-**

El recurso de epígrafe impugna una determinación interlocutoria mediante la cual, tras haberse celebrado la correspondiente audiencia evidenciaria, el TPI rechazó suprimir cierta evidencia derivada del diligenciamiento de una orden de allanamiento, así como aquella obtenida a consecuencia de tal acto, más encontrada en un lugar distinto y para el cual no existía una orden de allanamiento. Por tanto, el auto de *certiorari* es el vehículo más indicado para hacerlo.

Dicho esto, procederemos a atender conjuntamente los dos errores señalados por el peticionario. Mediante estos, impugna la negativa del foro primario a suprimir la evidencia obtenida durante el diligenciamiento de la aludida ordenanza, pese a que esta fue obtenida de un lugar ajeno y distinto al allí descrito. Asimismo, ataca la validez de la declaración jurada suscrita por el agente Rivera Rivera que inspiró la orden de registro y allanamiento emitida en el caso.

Según Pérez Adorno, de la prueba desfilada ante el TPI surge que las 53 bolsas plásticas transparentes conteniendo polvo blanco y las 8 de marihuana ocupadas de una tubería enterrada en la parte bajo de la propiedad allanada, "no solo se hizo sin mediar orden de allanamiento, sino que, tampoco cumple con una de las excepciones para un registro sin

---

[9] Véase Pueblo v. Gónzález Del Valle, *supra*,

orden discutidas previamente." Reclama que el Ministerio Público no demostró la aplicación de alguna de las excepciones reconocidas en nuestro ordenamiento jurídico para evadir en obtener una orden de allanamiento, como tampoco que le era imposible obtener la orden correspondiente. Ante estos reclamos, nos solicita que declaremos ilegal los registros efectuados y, consecuentemente, resolvamos que la evidencia obtenida como resultado de estos debe ser suprimida.

Por otro lado, a los fines de invalidar la orden de registro que en efecto sí fue expedida, tal cual reclamó procede hacer en el segundo error que señaló, arguye que el testimonio del agente que dio base a la expedición de tal mandato fue uno estereotipado. Fundamenta su contención en que el agente Rivera Rivera limitó su declaración a establecer detalles mínimos y generales que deben levantar sospecha.

Aparte de resaltar las faltas de las que entiende padece el testimonio del agente Rivera Rivera, el peticionario plantea que dicha declaración fue debidamente impugnada por lo pronunciado por su perito, el Sr. Ramón Pérez Díaz (señor Pérez), quien actualmente es retirado de la Policía de Puerto Rico. Según citado, el señor Pérez declaró que desde el negocio Emajagueño no se puede ver hacia la cancha y que alguna de las fotos que tomó fue para documentar que era sumamente difícil ver desde allí la casa. También, tal cual aludido, el señor Pérez indicó que tomó el camino que va subiendo hasta llegar a una casa al final y que contrario a lo indicado por el agente Rivera Rivera, no era posible ver hacia la casa del perjudicado porque el pasto estaba muy alto.

Ante estas y otras declaraciones, plantea que al comparar ambos testimonios puede apreciarse que un investigador- refiriéndose al señor Pérez-que visitó solamente una vez el lugar pudo describir con suma facilidad el área objeto de vigilancia, contrario a lo que hizo el agente

Rivera. Por esto, reclama que el testimonio de este último es uno falso, flaco y descarnado que debe suprimirse.

En contrario, y en defensa de la determinación recurrida, el Ministerio Público afirma que, para impugnarla, en su primer señalamiento de error el peticionario menciona la intervención del manejador del can y la del sargento Rivera Maldonado. Así, señala que cualquier alusión en cuanto a estos dos es impropia, pues se trata de evidencia externa que no fue objeto de examen por el foro primario, ya que ninguno de ellos declaró. De igual forma, señala que en ataque a la decisión el peticionario intenta sembrar duda sobre si los hechos dentro del interior de la casa, particularmente el área del baño, eran posibles según declarados. Esto, sin haber presentado prueba pericial a su favor que contradiga los testimonios dados.[10] El Ministerio Público destacó que la agente Espada-quien declaró sobre las incidencias dentro del baño de la propiedad allanada- brindó detalles suficientes de cómo estaba funcionando el inodoro y de cómo llegaron a la tubería de desagüe de este, la cual rompieron.

A su vez, el Ministerio Público expone que, según quedó establecido, el patio donde ubicaba la tubería les pertenecía a ambas plantas. Igual probado reclama fue que el tubo en particular pertenece a la residencia ubicada en el nivel superior, donde el peticionario reside. Por consiguiente, aduce que la conclusión alcanzada por el TPI en cuanto a que el tubo es parte del *curtilage* de la residencia objeto de la orden de registro es correcta en derecho. Siendo ello así, expone, los agentes podían registrar la tubería. Mucho más cuando conocían que el peticionario había arrojado algo por el

---

[10] Este argumento se refiere al cuestionamiento levantado por el peticionario en la página _ de su apelación sobre la imposibilidad de que una bolsa con ocho onzas fuera evacuada. También sobre aquel en el que sugiere que las declaraciones dadas durante la audiencia se contradicen, pues durante el testimonio brindado en sala los agentes afirmaron que el inodoro estaba vacío, mientras que la agente Nancy Espada indicó que el inodoro no "*flochaba*", por lo que "era físicamente imposible disponer de cualquier tipo de sustancia controlada a través del baño."

inodoro. Esta acción, según el Ministerio Público, causa que la evidencia haya sido abandonada por él.

Por otro lado, y sobre la validez de la orden de allanamiento, plantea que los detalles que Pérez Adorno señala faltan en el testimonio del agente Rivera Rivera no lo hacen falso ni increíble. En contrario, el Ministerio Público argumenta que el agente proveyó múltiples datos sobre su investigación y el área vigilada, dio descripciones de personas, marcas y modelos de carro y dónde se ubicaban con relación a la propiedad en sí. A su vez, destaca que el testimonio del Agente Rivera Rivera es cónsono con el contenido de su declaración jurada, la cual tiene datos adicionales. En ese sentido, el Ministerio Público afirma que un análisis del testimonio del agente Rivera Rivera, en conjunto con la declaración jurada que brindó para obtener la orden de registro demuestra sin lugar a duda que no estamos ante un testimonio estereotipado.

Si resolviéramos que el señor Pérez Adorno tiene razón en su segundo señalamiento de error y concluyéramos que procede invalidar la orden de allanamiento expedida por el TPI, cualquier evidencia obtenida durante la intervención debe suprimirse. Esto, incluiría la prueba obtenida del área del patio de la residencia. Al ser así, invertiremos el orden en que los errores fueron señalados por el peticionario y comenzaremos con este error primero.

De conformidad con lo que arriba establecimos, el peticionario alega que la orden de allanamiento expedida en el caso descansó en información falsa y bajo testimonio estereotipado. Sobre la falsedad alegada, expone que el testimonio del señor Pérez Díaz rebatió la declaración del agente investigador pues, según el perito testificó, desde los lugares en los que se ubicó al visitar el área, no se podía observar la residencia allanada. También, le resta credibilidad a la declaración al resaltar la falta de detalles específicos.

De la misma manera, al clasificar el testimonio del agente Rivera Rivera como uno estereotipado, señala que las declaraciones emitidas por él fueron generales y débiles. Igualmente, sostiene que su testimonio se limitó a establecer los elementos básicos necesarios para que se expidiera la orden, e incluso, afirma que esta es un calco de las declaraciones típicamente estereotipadas que se brindan con dicho fin.

Específicamente, señala que dicho agente, con excepción del primer día de su vigilancia, nunca estableció el lugar específico donde se estacionó para realizar la investigación. También, señala que tampoco describió el lugar donde se realizó la vigilancia; no describió las colindancias de la residencia sujeto a la investigación; nunca informó cuántas residencias había en el área, los colores, tipo de estructura, los árboles y vegetación; ni describió la carretera. Además, señala que la declaración del agente no describe el área que rodea la casa. Por último, asevera que el testimonio del agente Rivera Rivera debe descartarse pues las descripciones físicas que hace de las personas observadas durante la investigación son generales. Señala específicamente que pese a enunciar haber estado observando en seis ocasiones, el testimonio brindado no describe los ojos, las cejas, la nariz, la boca, el pelo facial, ni la forma de la cara. Por todas las faltas señaladas, como ya dijimos, aduce que debió descartarse la declaración jurada, invalidándose el allanamiento y ordenándose la supresión de la evidencia ocupada durante el mismo.

Con el fin de atender el cuestionamiento específico traído por el peticionario, hemos estudiado detenidamente la transcripción de la vista de supresión celebrada en el caso. De igual manera, hemos comparado las porciones citadas, tanto por el peticionario como por el Ministerio Público, con la reproducción de los procedimientos. Habiéndolo hecho, advertimos que ambas partes hacen un resumen adecuado de las incidencias acaecidas durante los días en que se celebró la vista de supresión de evidencia. Los

detalles que Pérez Adorno destaca faltan en la declaración jurada, ciertamente no están. Sobre estas no hay controversias.[11] No obstante, tras conocer la prueba desfilada ante el TPI y confrontarla con las alegaciones específicas traídas por Pérez Adorno, no encontramos razón alguna por la cual intervenir con la apreciación que de esta hizo el foro primario. Nos explicamos.

Según el TPI explicó al emitir su decisión, aunque los detalles señalados por Pérez Adorno faltaron, encontró que la ausencia de estos no hizo ni más o menos probable los hechos que sí fueron declarados. Según su criterio, tampoco convirtió el testimonio del agente en uno irreal o improbable y las declaraciones vertidas en sala por los testigos no fueron contradictorias, ni contuvieron lagunas o vaguedades que las hiciera poco creíbles o falsas. En su lugar, luego de estudiar la declaración jurada del agente Rivera Rivera y justipreciarla con su testimonio, encontró que más allá de limitarse a brindar los requisitos mínimos del delito, este brindó detalles sobre las circunstancias que rodearon su investigación, el tiempo de esta, sus trámites y resultados, alejándose de ser un testimonio estereotipado.

Pérez Adorno entiende que este análisis es incorrecto pues opina que la declaración del agente investigador es claramente estereotipada por ser falsa y una copia típica de este tipo de testimonio en el que se brindan los detalles mínimos. La falsedad que arriba indicamos el peticionario le imputa al testimonio del agente Rivera Rivera, descansa en que las circunstancias sobre el área cercana a la propiedad allanada descritas por él son contrarias a las dadas por su perito, el señor Pérez Díaz, quien sí describió el lugar. Basándose en esto, ratifica la naturaleza estereotipada de

---

[11] A su vez, el resumen de los testimonios vertidos durante esos días brindado por el Ministerio Público es correcto. Estos contienen las expresiones y detalles aseveraciones referidas por la parte recurrida.

la declaración jurada y pone en duda el poco valor probatorio que el tribunal le brindó a lo que su testigo declaró.

Aunque impugna el ejercicio evaluativo efectuado por el foro primario frente a la declaración jurada, ninguno de los argumentos que Pérez Adorno presenta demuestra la existencia de error manifiesto, prejuicio, parcialidad o pasión por parte del foro primario. En su lugar, solo deja entrever su inconformidad con la apreciación y credibilidad asignada.

Es norma altamente conocida que, ante la ausencia de los factores antes enunciados, no se favorece nuestra intervención con la apreciación de la prueba, la adjudicación de credibilidad y las determinaciones de hechos del TPI.[12] A juicio del foro primario, aunque la declaración jurada que dio lugar a la orden de allanamiento careció de algunos detalles, en esta se brindaron detalles adicionales relativos a la investigación y los trámites relativos a la misma, así como de sus resultados, que la hacían confiable. Coincidimos con este análisis. Habida cuenta de ello, resolvemos que no se equivocó el TPI al entender que la declaración jurada que motivó la orden de allanamiento en el caso fue conforme a derecho y, en consecuencia, resolver que no procedía suprimir la evidencia obtenida en el interior de la residencia.

Similar conclusión alcanzamos en cuanto a la evidencia encontrada en el patio de la propiedad, y obtenida durante el allanamiento efectuado. Para sostener la ilegalidad del hallazgo, Pérez Adorno intenta sembrar duda sobre los hechos ocurridos dentro del interior de la residencia, según fuero declarados por el agente Rivera Rivera y la agente Estrada.[13] De la misma forma, cuestiona por qué el Ministerio Público no acudió a obtener una orden antes de romper el tubo que se encontraba en el patio de la propiedad allanada. Ante esta falla, reclama la supresión de cualquier

---

[12] Peña Rivera v. Pacheco Caraballo, 213 DPR 1009, 1011 (2024) al citar a Ortiz Ortiz v. Medtronic, 209 DPR 759, 778 (2022) y otros.
[13] Aunque así intenta hacer, Pérez Adorno no refutó estos testimonios.

evidencia allí incautada. No obstante, en su discusión, el peticionario no rebate las expresiones consignadas por el TPI al explicar su decisión. Especialmente, aquellas en las que basándose en la prueba recibida: dictaminó que no podía concluirse que el predio de terreno donde se ubicaba el tubo que rompió la policía era de uso exclusivo del nivel inferior y que el registro realizado en dicha área está comprendido en la orden de registro y allanamiento expedida, ya que "allí se autorizó a realizar el registro de la planta superior (sin limitar exclusivamente su interior) y el tubo que fue registrado es parte de ese nivel.". Tampoco rebatió aquella porción del dictamen en el que implícitamente el tribunal incluye el área donde ubica la tubería como parte del *curtilage* de la propiedad. Ante ello, dictaminamos que tampoco se equivocó el TPI al negarse a suprimir la evidencia obtenida de la tubería que sirve a la propiedad allanada ubicada en el patio exterior de esta.

**-IV-**

Por los fundamentos antes esbozados, expedimos el auto de *certiorari* y **confirmamos** la resolución recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones