ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XII

| | | |
|---|---|---|
| EL PUEBLO DE PUERTO RICO<br><br>Recurrido<br><br>v.<br><br>IVÁN PIÑERO RIVERA<br><br>Peticionario | TA2025CE00638 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Aibonito<br><br>Caso Núm.:<br>B LA2025G0030 y 31, BSC202500049 al 51<br><br>Sobre:<br>Supresión de Evidencia |

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Adames Soto, el Juez Campos Pérez y la Jueza Trigo Ferraiuoli

Campos Pérez, Juez Ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 23 de enero de 2026.

Comparece el Sr. Iván Piñero Rivera (señor Piñero Rivera o Peticionario) y nos solicita que revoquemos una *Resolución* emitida el 9 de septiembre de 2025 por el Tribunal de Primera Instancia, Sala de Aibonito (TPI).[1] Por virtud de ésta, el TPI denegó una *Moción [de] Supresión de Evidencia* presentada por el Peticionario el 22 de mayo de 2025.

Examinado el recurso, adelantamos que resolvemos denegar el auto de *certiorari*.

**I.**

El 1 de febrero de 2025, el Ministerio Público presentó unas denuncias contra el señor Piñero Rivera por supuestas violaciones a la Ley Núm. 4 de 23 de junio de 1971, según enmendada, conocida como la *Ley de Sustancias Controladas de Puerto Rico*, 24 LPRA sec. 2101 *et seq.*, (en adelante, Ley Núm. 4) y la Ley Núm. 168-2020, según enmendada, conocida como la *Ley de Armas de Puerto Rico*, 25 LPRA sec.461 *et seq.*, (en adelante, Ley Núm. 168-2020).

---

[1] Notificada el 17 de septiembre de 2025.

Según surge del expediente, en esa misma fecha, agentes del Negociado de la Policía de Puerto Rico, adscritos al cuartel de la Policía del Municipio de Aibonito, junto con una unidad de agentes especializados de SWAT y la unidad canina de la Policía llevaron a cabo un allanamiento en la residencia del señor Piñero Rivera. Para ejecutar dicho allanamiento, la Policía contaba con una orden judicial librada el 29 de enero de 2025, que autorizaba el registro del hogar. Durante el allanamiento, los agentes ocuparon la siguiente mercancía:

1. Una pistola Taurus, modelo 62, negra, calibre 9 mm y la serie mutilada.
2. 26 municiones calibre 9 mm.
3. 1 laser con linterna.
4. 7 bolsitas de cocaína
5. 2 bolsas plásticas selladas con cocaína.
6. 1 envase plástico cilíndrico con marihuana.
7. 2 bolsas plásticas transparentes con marihuana.
8. Parafernalia: bolsitas plásticas, 1 desmoñador y dos envases plásticos.[2]

Como ya mencionamos, por estos hechos el Ministerio Público presentó una *Denuncia* contra el señor Piñero Rivera por violación a los Artículos 401 y 412 de la Ley Núm. 4 (24 LPRA secs. 2401 y 2412) y los Artículos 6.12 y 6.22 de la Ley Núm. 168-2020 (25 LPRA secs. 466k y 466u).

Después de celebrada la vista de la Regla 6, el foro impugnado celebró la vista preliminar el 22 de abril de 2025, en la que se encontró que existía causa probable para acusar al señor Piñero Rivera por los delitos imputados.[3]

Así pues, tras varias incidencias procesales, el 22 de mayo de 2025, la defensa del señor Piñero Rivera presentó una *Moción [de] Supresión de Evidencia*.[4] Mediante dicha moción, la defensa solicitó la eliminación de toda la evidencia obtenida en el allanamiento. A su entender, el diligenciamiento de dicha orden se efectuó en violación de

---

[2] Véase, informe sobre el *Diligenciamiento e Inventario* en los Autos Originales del caso B LA2025G00030, pág. 25.

[3] *Id.*, pág. 83.

[4] Véase, *Apéndice del Peticionario*, Entrada 1, Anejo 1, en el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC).

los principios constitucionales de razonabilidad, especificidad y legalidad. Fundamentó su alegación en que la descripción del señor Piñero Rivera que aparece en la orden no corresponde a su persona, pues ésta hace referencia a un individuo trigueño y él es de tez blanca. Además, sostuvo que se encontraba en la residencia allanada de manera ocasional. También, alegó que la "evidencia fue inicialmente localizada en un vehículo fuera de la estructura allanada, y posteriormente introducida al interior de la residencia para aparentar un hallazgo válido".[5] Por último, señaló que el can de la Policía no marcó ningún lugar dentro de la propiedad.

El Ministerio Público se opuso a la pretensión del señor Piñero Rivera. Argumentó que era inmaterial la descripción física de la persona que fue observada durante la investigación de los agentes del orden público, pues no existía controversia de que el acusado era la persona que se encontraba en posesión del material ocupado. Añadió que el propio señor Piñero Rivera manifestó ser el dueño de la vivienda durante la intervención policiaca. Por último, aseguró que la prueba desfilada durante la vista preliminar demostró que la evidencia incautada no se introdujo de forma fraudulenta como sugirió el señor Piñero Rivera.

Durante la vista se supresión de evidencia, celebrada el 22 de agosto de 2025, testificaron los siguientes declarantes: la agente Iliana I. Santiago Burgos, adscrita a la misma división; el agente Joel Guzmán Pibernus, adscrito a la División de Drogas y Narcóticos de Aibonito; y el señor Piñero Rivera.[6]

La agente Santiago Burgos testificó que llegó al lugar a ser allanado a las 6:55 de la mañana, pero que antes de entrar a la casa descrita en el documento judicial, ya los agentes de la División de Arrestos Especiales (en adelante, DAE) habían arrestado al señor Piñero Rivera.

---

[5] *Id.*

[6] En cumplimiento de nuestra *Resolución* de 22 de octubre de 2025, la Secretaría del Tribunal de Primera Instancia, Sala Superior de Aibonito, remitió a esta curia el enlace con la regrabación de la vista de supresión; así como los Autos Originales de los casos B LA2025G00030 y B SC202500049.

Manifestó que antes de diligenciar la Orden de Registro y Allanamiento, se la mostró al señor Piñero Rivera que se encontraba sentado en un sillón en la sala. Luego, le hizo las advertencias de rigor al imputado e inició el registro a la 7:15 de la mañana. Comenzó en el cuarto del acusado, en donde observó el arma incautada sobre la cama. A preguntas de la defensa, expuso que los agentes de la DAE no le informaron que el arma estaba encima de la cama. Testificó, además, que la droga que ocupó la halló sobre una mesa de centro en la sala y la otra en un sillón. También, mencionó que el perro de la Unidad Canina, que entró a hacer un recorrido no marcó en la escena.

Por su parte, el agente Guzmán Pibernus testificó que él fue el que llevó a cabo la vigilancia previa a la intervención con el señor Piñero Rivera y que, según su percepción, el acusado es una persona trigueña.

En tanto, el señor Piñero Rivera testificó que la intervención de los agentes ocurrió a las 5:25 de la mañana cuando todavía se encontraba durmiendo. Según narró, los agentes lo alumbraron con una linterna y lo "tiraron al piso, me esposaron […] me sentaron en el sillón cuando la agente me estaba enseñando la orden de allanamiento". Agregó, que los agentes que registraron su apartamento no hallaron nada. Introdujeron un can que tampoco marcó. Entonces, dijo que, cuando lo sacaban del inmueble, un policía pasó por detrás y apareció el material incautado encima de la cama. Atestiguó que, previamente, desde la ventana de la sala vio a dos policías registrando el interior y el baúl de un vehículo de su propiedad, el cual se encontraba sin seguro. Enfatizó que la orden de registro y allanamiento no incluía el vehículo.

En lo atinente al recurso que nos ocupa, durante la audiencia, la defensa se expresó acerca de la pertinencia de la presencia del agente con la unidad canina. Ante el cuestionamiento del TPI sobre si se había solicitado la correspondiente citación de dicho testigo, la defensa respondió en la negativa. Consiguientemente, después de examinar las posturas de las partes, la prueba y los testimonios presentados en la

vista celebrada, el TPI resolvió declarar No Ha Lugar la solicitud de supresión de evidencia.[7] En la *Resolución* emitida el 9 de septiembre de 2025, el foro primario expuso que el señor Piñero Rivera no logró probar sus alegaciones en cuanto a las supuestas irregularidades en el diligenciamiento de la orden en esta etapa del proceso. Expresó, además, que el imputado de delito fue arrestado por encontrase en posesión de un arma de fuego y sustancias controladas en el lugar allanado, por lo que era inmaterial la descripción física de la persona observada durante las vigilancias que llevó a cabo la Policía y que motivaron la expedición de la orden. No obstante, sostuvo que "le corresponderá al Ministerio Público explicar esas inconsistencias y probar en el juicio, más allá de duda razonable, que efectivamente el material delictivo estaba dentro de la residencia al momento del registro".

Insatisfecho, el señor Piñero Rivera acudió ante este foro intermedio mediante el recurso de epígrafe en el que señaló la comisión de los siguientes dos errores:

> *Erró el TPI Aibonito al denegar la Moción de Supresión de Evidencia sin celebrar una Vista completa ni recibir prueba testifical indispensable para la búsqueda de la verdad.*

> *Erró dl TPI Aibonito al no ejercer su facultad de citar Testigos [motu proprio] cuando en el uso pleno de su discre[c]ión judicial entiende ses [sic] necesario auscultar dichos testimonios que le sirvan para alcanzar el fin de la justicia en la "búsqueda de la verdad".*

El 12 de noviembre de 2025, el Pueblo de Puerto Rico, por conducto de la Oficina del Procurador General de Puerto Rico, presentó una *Solicitud de Desestimación*, en la que expuso que el señor Piñero Rivera incumplió con el Reglamento del Tribunal de Apelaciones, al no incluir un apéndice completo y suficiente, según establece la Regla 34 (E).[8] Aseguró que el Peticionario no anejó documentos indispensables para atender la controversia en sus méritos. En consecuencia, solicitó la

---

[7] *Apéndice del Peticionario*, Entrada 1, Anejo 2, en el SUMAC.
[8] Entrada 5 en el SUMAC.

desestimación del recurso incoado. Por su parte, el 4 de diciembre de 2025, el señor Piñero Rivera replicó.

A instancia nuestra,[9] el Pueblo presentó su alegato en oposición al auto de *certiorari*.[10] Con el beneficio de la comparecencia de las partes, resolvemos.

## II.

## A.

El auto de *certiorari* es un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones judiciales de un foro inferior y corregir algún error cometido por éste. *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020); *IG Builders et al., v. BBVAPR*, 185 DPR 307, 337-338 (2012); *García v. Padró*, 165 DPR 324, 334 (2005). Al ejercer su facultad revisora, el foro apelativo tiene la potestad discrecional para expedir o denegar el recurso solicitado. *García v. Padró, supra*. La *discreción* ha sido definida como el "poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción". *Id.*, que cita a *Pueblo v. Ortega Santiago*, 125 DPR 203, 211 (1990). Por ende, es "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera..." *Pueblo v. Sánchez González*, 90 DPR 197, 200 (1964), citado con aprobación en *García v. Padró, supra*, págs. 334-335.

Es sabido que, en el ejercicio de nuestra discreción, revisamos el auto discrecional de *certiorari* del título, al palio de los siete criterios esbozados en la Regla 40 del Reglamento del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 62-63, 215 DPR __ (2025).[11] Como se conoce, de ordinario, este tribunal intermedio no

---

[9] Entrada 6 en el SUMAC.
[10] Entrada 7 en el SUMAC.
[11] Al determinar la expedición de un auto de *certiorari*, este Tribunal toma en consideración los siguientes criterios:
    (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
    (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

interviene con las determinaciones emitidas por el foro primario, salvo que se pruebe que el tribunal impugnado incurrió en arbitrariedad o abuso de discreción. *Pueblo v. Rivera Santiago*, 176 DPR 559, 580-581 (2009).

**B.**

La Cuarta Enmienda de la Constitución de Estados Unidos y la Sección 10, del Artículo II, de nuestra Carta Magna protegen el derecho de las personas y sus pertenencias contra registros, incautaciones y allanamientos irrazonables. Enmienda IV, Const. EE. UU. LPRA, Tomo 1, ed. 2023, págs. 187; Art. II, Sec. 10, Const. ELA, LPRA, Tomo 1, ed. 2023, pág. 340. Ambas cláusulas son la "matriz de la garantía de los derechos individuales ante la intervención injustificada del Estado con el ciudadano". *Pueblo v. Salamanca Corchado,* 210 DPR 582, 590 (2022). Además, en el caso de la Constitución de Puerto Rico, expresamente se dispone que la "[e]videncia obtenida en violación de esta sección será inadmisible en los tribunales". Véase Art. II, Sec. 10, Const. ELA, *supra*; *Pueblo v. Rolón Rodríguez,* 193 DPR 166, 175 (2015).

Nuestro Tribunal Supremo ha opinado que los fines de tales salvaguardas son: la disuasión de los funcionarios del orden público para que no transgredan los preceptos constitucionales, la protección de la integridad de los foros judiciales para que no se permita que en sus procedimientos se utilice evidencia obtenida ilegalmente y la privación del Estado para que se beneficie de sus propios actos ilegales. *Pueblo v. Rivera Surita*, 202 DPR 800, 806 (2019).

---

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Con el fin de salvaguardar la dignidad e intimidad de las personas contra las actuaciones arbitrarias del Estado, es fundamental que en los casos de arresto o los de registro y allanamiento se expida una orden judicial que esté apoyada en una determinación de causa probable. *Pueblo v. Salamanca Corchado, supra*, pág. 591. Esta debe estar basada en juramento o afirmación. También, la orden debe incluir "una descripción detallada del lugar a ser allanado, las personas y cosas a registrarse y los objetos a ser ocupados". *Id.*, citando a *Pueblo v. Rolón Rodríguez, supra*, págs. 177-178.

En resumen, nuestra alta curia ha pautado que, para la liberación de una orden judicial de registro y allanamiento, se requiere: "(1) una **declaración bajo juramento** o afirmación; (2) en la que surja la **causa probable**; (3) que la orden sea librada por una **autoridad judicial**, y (4) en ella se escriba el nombre o **se describa con particularidad** la persona o **el lugar a ser registrado y las cosas o la propiedad por ocuparse**". (Énfasis nuestro). *Pueblo v. Salamanca Corchado, supra,* pág. 592. Con relación a la causa probable, el alto foro ha enunciado que, en materia de registros y allanamientos, "la doctrina sobre la determinación de causa probable se examina **a base de probabilidades y del estándar de la persona prudente y razonable**". (Énfasis nuestro). *Id.*, pág. 596.

El criterio de la probabilidad es un concepto esencialmente objetivo y no debe apoyarse únicamente en elementos subjetivos. *Id.,* pág. 599. Claro está, va a depender de las circunstancias de cada caso. En cuanto al examen de revisión de la determinación de causa probable que hace el tribunal al expedir una orden de registro, la doctrina ha pautado que su análisis estima "**si la evidencia considerada en su totalidad proveía una base sustancial para la determinación de causa probable por el magistrado**". (Énfasis nuestro). E. Chiesa Aponte, *Derecho Procesal Penal de Puerto Rico y Estados Unidos*, Editorial Forum, 1995, vol. I, pág. 246, que cita a *Massachussetts v. Upton*, 466 U.S. 727, 728 (1984).

Cónsono con la regla de exclusión consignada en el texto constitucional, la Regla 231 de las Reglas de Procedimiento Criminal, 34 LPRA Ap. II, establece requisitos procesales adicionales que favorecen la implementación de la protección constitucional contra los registros y allanamientos irrazonables. Específicamente, dispone como sigue:

> No se librará orden de allanamiento o registro sino en virtud de declaración escrita, prestada ante un magistrado bajo juramento o afirmación, que exponga los hechos que sirvan de fundamento para librarla. Si de la declaración jurada y del examen del declarante el magistrado quedare convencido de que existe causa probable para el allanamiento o registro, librará la orden en la cual se nombrarán o describirán con particularidad la persona o el lugar a ser registrado y las cosas o propiedad a ocuparse. La orden expresará los fundamentos habidos para expedirla, y los nombres de las personas en cuyas declaraciones juradas se basare. Ordenará al funcionario a quien fuere dirigida registre inmediatamente a la persona o sitio que en ella se indique, en busca de la propiedad especificada, y devuelva al magistrado la orden diligenciada, junto con la propiedad ocupada. La orden dispondrá que será cumplimentada durante las horas del día, a menos que el magistrado, por razones de necesidad y urgencia, dispusiere que se cumplimente a cualquier hora del día o de la noche.

Aunque el registro y allanamiento se haya realizado por orden judicial, la persona legitimada podrá solicitar al tribunal la supresión de cualquier evidencia obtenida en virtud de un allanamiento o registro por el fundamento de que la orden adolece de los requisitos constitucionales, incluyendo la ausencia de causa probable o la insuficiencia de la declaración jurada; o por la ilegalidad en el diligenciamiento. Regla 234 de Procedimiento Criminal, 34 LPRA Ap. II, R. 234.[12]

---

[12] La norma procesal establece lo que sigue:

Regla 234. — Allanamiento; moción de supresión de evidencia.

La persona agraviada por un allanamiento o registro ilegal podrá solicitar del tribunal al cual se refiere la Regla 233 la supresión de cualquier evidencia obtenida en virtud de tal allanamiento o registro, o la devolución de la propiedad, por cualquiera de los siguientes fundamentos:

(a) Que la propiedad fue ilegalmente ocupada sin orden de allanamiento o registro.

(b) Que la orden de allanamiento o registro es insuficiente de su propia faz.

(c) Que la propiedad ocupada o la persona o sitio registrado no corresponde a la descripción hecha en la orden de allanamiento o registro.

(d) Que no había causa probable para creer en la existencia de los fundamentos en que se basó la orden de allanamiento o registro.

(e) Que la orden de allanamiento fue librada o cumplimentada ilegalmente.

(f) Que es insuficiente cualquier declaración jurada que sirvió de base a la expedición de la orden de allanamiento porque lo afirmado bajo juramento en la declaración es falso, total o parcialmente.

En la moción de supresión de evidencia se deberán exponer los hechos precisos o las razones específicas que sostengan el fundamento o los fundamentos en

Ahora bien, el Tribunal Supremo ha reiterado que "una moción de supresión de evidencia no debe meramente aludir al inciso aplicable, sino que **el promovente deberá expresar con especificidad y precisión los hechos en los que se basa su petición**". (Énfasis nuestro). *Pueblo v. Rolón Rodríguez, supra,* pág. 183. Es decir, la parte que impulsa una moción de supresión de evidencia debe exponer los hechos precisos y razones específicas que sostengan el fundamento en que basa su reclamo. *Pueblo v. Blase Vázquez,* 148 DPR 618, 628 (1999).

El tribunal, por su parte, oirá la prueba sobre cualquier cuestión de hecho y adjudicará conforme la totalidad de las circunstancias, así como por la credibilidad conferida. *Pueblo v. Bonilla Romero,* 120 DPR 92, 109-110 (1987).

> En suma, la norma jurisprudencial es "que toda incautación o registro que se realice sin orden judicial se presume irrazonable y, por lo tanto, inválida". *Pueblo v. Blase Vázquez, supra,* pág. 631. Por consiguiente, corresponde al Estado demostrar que el registro realizado fue válido y razonable. *Pueblo v. Vázquez Méndez,* 117 DPR 170, 177 (1986). Por el contrario, **cuando el registro se efectúa al amparo de una orden judicial, impera una presunción de legalidad y razonabilidad**. *Id.,* pág.179. Así, quien impugna la orden judicial tiene el **peso probatorio** para sostener que el registro y la incautación fueron irrazonables e ilegales, exponiendo los hechos precisos y fundamentos específicos. *Pueblo* v. *Maldonado, Rosa,* 135 DPR 563, 570 (1994). Esto es, debe probar que el **testimonio** que dio lugar al mandamiento fue **vago o estereotipado**, porque se reduce a establecer los elementos mínimos necesarios para sostener un delito sin incluir detalles imprescindibles para

que se basa la misma. El tribunal oirá prueba sobre cualquier cuestión de hecho necesaria para la resolución de la solicitud y celebrará una vista evidenciaria ante un magistrado distinto al que atenderá el juicio, cuando se trate de evidencia incautada mediando una orden judicial y la parte promovente demuestre que existe una controversia sustancial de hechos que haga necesario la celebración de la vista; en ausencia de tal demostración, el tribunal podrá adjudicar la moción sin vista previa utilizando como base los escritos presentados por las partes.

El tribunal vendrá obligado a celebrar una vista evidenciaria con antelación al juicio, y ante un magistrado distinto al que atenderá el juicio, cuando se trate de evidencia incautada sin previa orden judicial si en la solicitud la parte promovente aduce hechos o fundamentos que reflejan la ilegalidad o irrazonabilidad del registro, allanamiento o incautación. El Ministerio Público vendrá obligado a refutar la presunción de ilegalidad del registro o incautación y le corresponderá establecer los elementos que sustentan la excepción correspondiente al requisito de orden judicial previa.

De declararse con lugar la moción, la propiedad será devuelta, si no hubiere fundamento legal que lo impidiere, y no será admisible en evidencia en ningún juicio o vista. La moción se notificará al fiscal y se presentará cinco (5) días antes del juicio a menos que se demostrare la existencia de justa causa para no haberla presentado dentro de dicho término o que el acusado no le constaren los fundamentos para la supresión, o que la ilegalidad de la obtención de la evidencia surgiere de la prueba del fiscal.

reforzarlos. *Pueblo v. Rivera Rodríguez*, 123 DPR 467, 480 (1989); *Pueblo v. González del Valle*, 102 DPR 374, 376 (1974). En ausencia de esta demostración, **el tribunal puede adjudicar la moción, a base de los escritos presentados por las partes sin celebrar vista evidenciaria**, ya que sólo viene obligado a celebrarla "cuando se trate de evidencia incautada mediando una orden judicial y la parte promovente demuestre que existe una controversia sustancial de hechos que haga necesario la celebración de la vista". *Pueblo v. Serrano Reyes*, 176 DPR 437, 447 (2009).

### III.

En su recurso, en esencia, el Peticionario levanta los mismos cuestionamientos sobre las alegadas irregularidades cometidas por los agentes de la Policía durante el allanamiento en su residencia. En particular, señala que el TPI falló al transferir "indebidamente la carga probatoria al encausado", al no requerir la comparecencia de los testigos que podían corroborar sus alegaciones, en referencia a la agente del can, Yomaira González Ramos, a los del DAE y al agente Nelson Fortis Pérez de Servicios Técnicos, así como "cualquier otro testigo que el Tribunal estime necesario para el esclarecimiento de los hechos".

En cambio, el Pueblo sostiene que procede denegar la expedición del auto solicitado por los mismos fundamentos que expuso en su petición de desestimación. Asegura, además, que los planteamientos del señor Piñero Rivera son vagos, confusos, imprecisos e improcedentes en derecho. Afirma que, ante una orden de registro y allanamiento que se presume válida y legal, al Peticionario le correspondía el peso de la prueba para demostrar la supuesta ilegalidad cometida por los agentes del orden público. Veamos.

Luego de un examen minucioso del expediente ante nos, acordamos denegar la expedición del recurso ante nuestra consideración, debido a que éste no logra persuadir nuestra discreción, a la luz de los criterios enumerados en la Regla 40 de nuestro Reglamento, *supra.* Si bien el ordenamiento procesal penal provee para que el tribunal expida una citación para la comparecencia y examen bajo

juramento de testigos, la norma establece palmariamente que el magistrado "podrá expedir u ordenar al secretario que expida citación para la comparecencia de cualquier testigo a juicio, a la toma de su deposición o a cualquier vista. El secretario del tribunal, a petición del acusado, podrá expedir citaciones libres de costas a esos mismos fines". Véase, Regla 235 de Procedimiento Criminal, 34 LPA Ap. II, R. 235. Es decir, corresponde a la persona imputada solicitar oportunamente la citación, lo que en este caso no ocurrió. No fue hasta iniciada la vista que la defensa aludió a la pertinencia del testimonio de la agente de la unidad canina. Nótese, además, que el señor Piñero Rivera contó por lo menos con un plazo de por lo menos tres meses desde que instó su petición de supresión y la celebración de la audiencia para realizar dicho trámite. Recuérdese que, en este procedimiento en particular, toda vez que medió una orden de registro y allanamiento, el peso de la prueba para derrotar la presunción de legalidad recaía en el Peticionario. Véase, Regla 234 de Procedimiento Criminal, *supra*; *Pueblo* v. *Maldonado, Rosa, supra*. A tales efectos, no advertimos que el TPI haya incurrido en prejuicio o parcialidad, o que haya cometido un craso abuso de su discreción al interpretar o aplicar la norma procesal o sustantiva aplicable a la situación de hechos presentada ante su consideración.

## IV.

En mérito de lo anterior, denegamos expedir el recurso de *certiorari*.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones